**Candi BELL, Administratrix of the Estate of David Lynn Bell, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 85–827–N.**

United States District Court, E.D. Virginia, Norfolk Division.

May 20, 1986.

---

John H. Klein, Breit, Rutter & Montagna, Norfolk, Va., for plaintiff.

Michael A. Rhine, Asst. U.S. Atty., Dept. of Justice, Norfolk, Va., for defendant.

## OPINION AND ORDER

DOUMAR, District Judge.

The plaintiff in this action seeks damages from the United States for wrongs allegedly perpetrated by officials of the United States Navy surrounding the death of her husband, former AT1 David L. Bell, U.S.N.[1] The factual allegations contained in the complaint and the legal issues raised by the defendant's motions to dismiss and for summary judgment call into question the nature and scope of the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (FTCA). After carefully analyzing the pertinent statutes and case law, the submissions of the parties and the arguments made during a hearing on these motions, the Court has concluded, for the reasons detailed below, that the FTCA was not intended to encompass a suit of this kind. Accordingly, the defendant's motion for summary judgment is GRANTED.

### I.

David L. Bell was a squadron safety petty officer attached to Fighter Squadron 142 at the Naval Air Station at Oceana, Virginia. Until the incidents giving rise to this action, his military record reflects uniformly outstanding job performance and consistently excellent evaluations. His superiors, according to their written evaluations, generally found him "an excellent example for his peers" and remarked on his "exceptional command of the English language." He was "a likeable individual whose honest, forthright manner capture[d] the respect of all who [came] in contact with him." As for his job skills, he was rated a "highly effective and innovative technician" who "continued to be a driving force in the smooth transition of [the] command to its added responsibilities...." Consequently, Bell was consistently recommended for advancement.

Bell's obligations to the Navy were scheduled to terminate after 10 years of service on August 29, 1984. In pursuing the possibility of reenlisting, Bell asked for and received a one-month extension on his military service. Bell informed his superiors that he would reenlist for a six-year period provided certain concessions were made concerning the terms of his military service. Although some of the concessions appeared to be disquieting to some of Bell's superiors, his skill at his job and a manpower shortfall strengthened his hand and his

---

1. The plaintiff submitted this claim for administrative determination and the claim was denied, vesting this Court with subject matter jurisdiction. 28 U.S.C. § 2675.

superiors capitulated and accepted his conditions.

Bell apparently changed his mind about reenlisting for active duty, deciding instead to enlist in the U.S. Naval Reserve Training and Administration for Reserves (TAR) program. As a preliminary step in the TAR enlistment procedure, the Naval Reserve Unit requested information concerning Bell's "projected reenlistment code" from his squadron's personnel office. That office responded that Bell's proposed reenlistment code at discharge would be "RE–R1" or recommended for preferred reenlistment. Bell's immediate superior, Commander S.P. Letter, apparently first learned of Bell's change of heart from the personnel file.

When Letter discovered Bell's intention to pursue reserve, rather than active, duty, it had immediate and markedly adverse consequences on Letter's evaluation of Bell, and hence, his reenlistment code. While Bell still scored very high in most categories, Letter gave Bell a "2.0" score on reliability. Letter noted that Bell's decision, made at such a late date, left the squadron with a very serious manpower shortage and alleged that such a decision reflected a character trait undesirable in Navy personnel. As a result of the 2.0 reliability score, Bell's reenlistment code was changed from RE–R1 to RE4 or not eligible for reenlistment, either for active duty or the TAR program.

Allegedly, Bell took Letter's action very hard. He asked Letter to reconsider on October 1, the day he received his discharge papers and discovered his reenlistment code. When Letter refused to consider the change, Bell contacted the Naval Legal Office at Oceana and was allegedly informed that, since he was no longer in the Navy, the office was unable to assist him. Bell's wife then phoned the office of Admiral Steele to seek alteration of the code. She spoke with one of the Admiral's assistants who referred Bell back to Letter.

For a second time, Letter refused to change the score, allegedly saying he was going to make it "damn hard" on Bell.

Allegedly distraught over the Navy's actions in the matter, Bell committed suicide on November 10, 1984.[2] His wife has pursued, and continues to pursue, the available administrative remedies to have her husband's records changed. By memorandum dated January 27, 1986, a three person panel of the Board for Correction of Naval Records voted to approve Ms. Bell's petition for correction. All three of the Board's representatives concluded that an injustice existed warranting some relief. Two of the three voted for complete relief, the third would have affirmed Letter's recommendation against advancement and reenlistment but would have corrected the unfair "reliability" evaluation. The Board's decision is now before the Secretary for review; no official decision has been rendered.

## II.

■ During oral argument on the defendant's motions, the plaintiff's counsel made representations to the Court of a most disturbing nature. The plaintiff argues, and we must assume as true, *see United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965), that Cmdr. Letter intentionally assigned Bell his 2.0 reliability score to avoid the adverse consequences of failing to reenlist a man of Bell's caliber. The plaintiff proffers that awards are made to commanding officers who are successful in retaining skilled personnel. Losing Bell was going to cost Letter dearly; the plaintiff claims that assigning Bell a very poor reenlistment code was the only way Letter could salvage his chance for the award.

The plaintiff alleges that Letter's actions amount to defamation and claimed damages for slander and libel; the parties now concede that 28 U.S.C. § 2680(h) precludes any recovery under the FTCA for such

---

**2.** The plaintiff alleges that her husband's suicide was proximately caused by the Navy's actions. Without passing on the veracity of this asser-

tion, this Court will assume its truth. See *United States v. Mississippi*, 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965).

intentional torts. Because Letter's actions occurred during, and in the course of, Bell's military service, recovery for Letter's alleged wrongs is also barred by the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). In that case, the United States Supreme Court held that "the government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159.

The plaintiff, however, attempts to distinguish *Feres* and its progeny and seeks damages predicated on the Navy's conduct since Bell's discharge. In her complaint, she alleges that the "defendant through its employees ... negligently failed to correct and/or rectify the improper discharge ranking of the plaintiff's decedent." Complaint at ¶ 6. Since the Navy's alleged negligence occurred after Bell's discharge, the plaintiff claims it did not "arise" out of his military services.

The plaintiff's characterization of the phrase "arise out of" is much too restrictive. The Navy's subsequent actions concerning Bell's evaluation and reenlistment code necessarily arose out of Letter's initial evaluation and code assignment. To contend otherwise is to ignore the facts at issue. In interpreting this same language in a slightly different context, the United States Supreme Court has recently indicated that the terms should be read expansively. *See United States v. Shearer,* ––– U.S. –––, –––, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985) (interpreting § 2680(h) and barring negligence claim "arising out of" intentional tort).

More importantly, the maintenance of this action would require this Court to engage in just the sort of second-guessing the *Feres* doctrine was intended to prevent. "Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established military relationship between enlisted military personnel and their superior officers," *Chappell v. Wallace,* 462 U.S. 296, 300, 103 S.Ct. 2362, 2366, 76 L.Ed.2d

586 (1983). The *Feres* doctrine "seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the [FTCA] were allowed for ... negligent acts committed in the course of military duty. *United States v. Muniz,* 374 U.S. 150, 162, 83 S.Ct. 1850, 1857, 10 L.Ed.2d 805 (1963), quoting *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954). "To permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of [its] ... disciplinary decisions; for example, whether to overlook a particular incident or episode, [or] whether to discharge a service man." *United States v. Shearer,* ––– U.S. –––, –––, 105 S.Ct. 3039, 3044, 87 L.Ed.2d 38 (1985).

This Court is unwilling to pursue such an inquiry.

### III.

■ Even if the Navy's post-discharge actions fell outside the scope of the *Feres* doctrine, this suit would be precluded by the specific statutory exemptions found at 28 U.S.C. § 2680.

The plaintiff's claim is predicated on the failure of Navy officials to correct an "obvious[ly] unjustified ranking." Complaint at ¶ 19. Only three possible scenarios could have resulted in the sequence of events giving rise to this cause of action. The first, which plaintiff ardently rejects, is that the Navy was completely justified by Bell's actions in giving the RE–4 code. For purposes of these motions, the Court cannot consider this alternative.

Second, it is proposed that the Navy officials were negligent in not recognizing the "obvious" falsity of Letter's evaluation. In rejecting Bell's informal efforts to rectify his records, they allegedly failed to exercise due care in examining the facts underlying Letter's evaluation. At most, however, such a failing constitutes an abuse of their discretionary powers to correct per-

ceived injustices. To prevent the same sort of endless second-guessing that led the Court to adopt the *Feres* doctrine, Congress expressly exempted from the FTCA cases based on the "exercise or performance or failure to exercise or perform a discretionary function." 28 U.S.C. § 2680(a); *see also United States v. S.A. Empresa de Viacao Aerea Rio Grandense,* 467 U.S. 797, 813–14, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

The third possibility is that the Navy purposefully refused to "correct" Bell's record, either to avoid potential embarrassment or for some more nefarious motive. If, in fact, these officials intended to sabotage Bell's future, the United States is exempted from liability by 28 U.S.C. § 2680(h). It has long been held that claims for interference with prospective pecuniary advantage are included within the broad term "interference with contract rights" and thus outside the reach of the FTCA. *See Art Metal-USA, Inc. v. United States,* 753 F.2d 1151 (D.C.Cir.1985); *Dupree v. United States,* 264 F.2d 140 (3d Cir.) *cert. denied* 361 U.S. 823, 80 S.Ct. 69, 4 L.Ed.2d 67 (1959); *Moessmer v. United States,* 569 F.Supp. 782 (E.D.Mo.1983); *Taxay v. United States,* 345 F.Supp. 1284 (D.D.C.1972) *aff'd.* 487 F.2d 1214 (1973). Although the plaintiff also seeks damages for the mental anguish that allegedly caused Bell to commit suicide, quite apart from any injury to his employment prospects, the plaintiff now contends that Letter intended to make it "damn hard" on Bell, presumably in pursuing a reservist role in the TAR program. It is clear that any emotion damage sustained by Bell "arose out of" Letter's intentional interference with his prospective contract rights and thus would be barred by the operation of § 2680(h). *See United States v. Shearer,* —— U.S. ——, ——, 105 S.Ct. 3039, 3042–43, 87 L.Ed.2d 38 (1985) (construing the "arising out of" language of 28 U.S.C. § 2680(h)). Accordingly, the defendant's motion for summary judgment is hereby GRANTED.

IT IS SO ORDERED.