UNITED STATES *v.* SHEARER, INDIVIDUALLY AND AS ADMINISTRATRIX FOR THE ESTATE OF SHEARER

No. 84–194.   Argued February 25, 1985—Decided June 27, 1985

BURGER, C. J., announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II–B, and III, in which BRENNAN, WHITE, BLACKMUN, REHNQUIST, STEVENS, and O'CONNOR, JJ., joined, and an opinion with respect to Part II–A, in which WHITE, REHNQUIST, and O'CONNOR, JJ., joined. BRENNAN, J., filed an opinion concurring in part and concurring in the judgment, in which BLACKMUN and STEVENS, JJ., joined, *post*, p. 59. MARSHALL, J., filed an opinion concurring in the judgment, *post*, p. 60. POWELL, J., took no part in the decision of the case.

*Deputy Solicitor General Geller* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Acting Assistant Attorney General Willard, David A. Strauss, Anthony J. Steinmeyer,* and *Robert V. Zener.*

*William T. Cannon* argued the cause and filed a brief for respondent.

CHIEF JUSTICE BURGER delivered the opinion of the Court, except as to Part II–A.

We granted certiorari to decide whether the survivor of a serviceman, who was murdered by another serviceman, may recover from the Government under the Federal Tort Claims Act for negligently failing to prevent the murder.

I

Respondent is the mother and administratrix of Army Private Vernon Shearer. While Private Shearer was off duty at Fort Bliss and away from the base, he was kidnaped and murdered by another serviceman, Private Andrew Heard. A New Mexico court convicted Private Heard of Shearer's murder and sentenced him to a term of 15 to 55 years' imprisonment.

Respondent brought this action under the Federal Tort Claims Act, 28 U. S. C. §§ 1346(b) and 2671 *et seq.*, claiming

that the Army's negligence caused Private Shearer's death. Respondent alleged that Private Heard, while assigned to an Army base in Germany in 1977, was convicted by a German court of manslaughter and sentenced to a 4-year prison term. Upon his discharge from that confinement in Germany, the Army transferred Private Heard to Fort Bliss. Respondent alleged that, although the Army knew that Private Heard was dangerous, it "negligently and carelessly failed to exert a reasonably sufficient control over" him and "failed to warn other persons that he was at large." App. 14.

The United States District Court for the Eastern District of Pennsylvania granted summary judgment in favor of the Government. The Court of Appeals reversed. 723 F. 2d 1102 (CA3 1983). The court held that *Feres* v. *United States*, 340 U. S. 135 (1950), did not bar respondent's suit because "[g]enerally an off-duty serviceman not on the military base and not engaged in military activity at the time of injury, can recover under FTCA." 723 F. 2d, at 1106. The court also held that respondent's suit was not precluded by the intentional tort exception to the Act, 28 U. S. C. § 2680(h). The Court of Appeals noted that respondent's complaint alleged negligence and reasoned that "if an assault and battery occurred as a 'natural result' of the government's failure to exercise due care, the assault and battery may be deemed to have its roots in negligence and therefore it is within the scope of the FTCA." *Id.*, at 1107.[1]

We granted certiorari. 469 U. S. 929 (1984). We reverse.

## II

### A

The Federal Tort Claims Act's waiver of sovereign immunity does not apply to "[a]ny claim arising out of assault [or] battery," 28 U. S. C. § 2680(h), and it is clear that re-

---

[1] Judge Garth dissented on the ground that respondent's claim is barred by *Feres* and the intentional tort exception to the Act.

spondent's claim arises out of the battery committed by Private Heard. No semantical recasting of events can alter the fact that the battery was the immediate cause of Private Shearer's death and, consequently, the basis of respondent's claim.

Respondent cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee. Thus "the express words of the statute" bar respondent's claim against the Government. *United States* v. *Spelar,* 338 U. S. 217, 219 (1949).

The legislative history of § 2680(h), although sparse, is entirely consistent with our interpretation. There is no indication that Congress distinguished between "negligent supervision" claims and *respondeat superior* claims, with only the latter excluded under the Act. Instead it appears that Congress believed that § 2680(h) would bar claims arising out of a certain type of factual situation—deliberate attacks by Government employees. For example, Congress was advised by the Department of Justice that the exception would apply "where some agent of the Government gets in a fight with some fellow . . . [a]nd socks him." Tort Claims: Hearings on H. R. 5373 and H. R. 6463 before the House Committee on the Judiciary, 77th Cong., 2d Sess., 33 (1942).

It is clear that Congress passed the Tort Claims Act on the straightforward assurance that the United States would not be financially responsible for the assaults and batteries of its employees. See Tort Claims Against the United States: Hearings on S. 2690 before a Subcommittee of the Senate Committee on the Judiciary, 76th Cong., 3d Sess., 39 (1940). No one suggested that liability would attach if the Government negligently failed to supervise such an assailant.

This legislative understanding was reconfirmed in 1974 when Congress amended § 2680(h) to waive sovereign immunity for claims arising out of the intentional torts of law enforcement officers. See Pub. L. 93–253, § 2, 88 Stat. 50. The premise of the legislation was that unamended § 2680(h) "protect[ed] the Federal Government from liability when its agents commit[ted] intentional torts such as assault and battery." S. Rep. No. 93–588, p. 3 (1973). Once again, Congress did not hint that it thought the Government's liability for an assault and battery turned on the adequacy of supervision or warnings.[2]

The Court's interpretation of parallel exceptions in § 2680 also supports our decision. In *United States* v. *Neustadt*, 366 U. S. 696 (1961), the Court held that the exception in § 2680(h) for claims "arising out of . . . misrepresentation" covers cases in which negligence underlies the inaccurate representation. And in *Kosak* v. *United States*, 465 U. S. 848 (1984), we held that the exception for claims "arising in respect of . . . the detention of any goods or merchandise by any officer of customs" includes a claim for negligent handling. Because Congress viewed these exceptions in the same light as the exception at issue here, see, *e. g.*, H. R. Rep. No. 1287, 79th Cong., 1st Sess., 6 (1945), it is inescapable that the phrase "arising out of assault [or] battery" is broad enough to encompass claims sounding in negligence.

Today's result is not inconsistent with the line of cases holding that the Government may be held liable for negligently failing to prevent the intentional torts of a non-employee under its supervision. See, *e. g.*, *Panella* v. *United States*, 216 F. 2d 622 (CA2 1954) (Harlan, J.). In enacting the Federal Tort Claims Act, Congress' focus was

---

[2] This is true even though Congress had reason to believe that "several incidents" of "abusive, illegal and unconstitutional 'no-knock' raids" by federal narcotics agents were the result of inadequate supervision. See S. Rep. No. 93–588, p. 2 (1973).

on the extent of the Government's liability for the actions of its *employees*. See generally *Panella, supra*, at 626. Thus, in referring to assaults and batteries in § 2680(h), Congress at least intended to exclude claims arising from such intentional torts committed by Government employees.

## B

Our holding in *Feres* v. *United States*, 340 U. S. 135 (1950), was that a soldier may not recover under the Federal Tort Claims Act for injuries which "arise out of or are in the course of activity incident to service." *Id.*, at 146. Although the Court in *Feres* based its decision on several grounds,

> "[i]n the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.'" *United States* v. *Muniz*, 374 U. S. 150, 162 (1963), quoting *United States* v. *Brown*, 348 U. S. 110, 112 (1954).

The *Feres* doctrine cannot be reduced to a few bright-line rules; each case must be examined in light of the statute as it has been construed in *Feres* and subsequent cases. Here, the Court of Appeals placed great weight on the fact that Private Shearer was off duty and away from the base when he was murdered. But the situs of the murder is not nearly as important as whether the suit requires the civilian court to second-guess military decisions, see *Stencel Aero Engineering Corp.* v. *United States*, 431 U. S. 666, 673 (1977), and whether the suit might impair essential military discipline, see *Chappell* v. *Wallace*, 462 U. S. 296, 300, 304 (1983).

Respondent's complaint strikes at the core of these concerns.[3]  In particular, respondent alleges that Private Shearer's superiors in the Army "negligently and carelessly failed to exert a reasonably sufficient control over Andrew Heard, . . . failed to warn other persons that he was at large, [and] negligently and carelessly failed to . . . remove Andrew Heard from active military duty."  App. 14.  This allegation goes directly to the "management" of the military; it calls into question basic choices about the discipline, supervision, and control of a serviceman.[4]

Respondent's case is therefore quite different from *Brooks* v. *United States*, 337 U. S. 49 (1949), where the Court allowed recovery under the Tort Claims Act for injuries caused by a negligent driver of a military truck.  Unlike the negligence alleged in the operation of a vehicle, the claim here would require Army officers "to testify in court as to each other's decisions and actions."  *Stencel Aero Engineering Corp.* v. *United States, supra,* at 673.  To permit this type of suit would mean that commanding officers would have to stand prepared to convince a civilian court of the wisdom of a wide range of military and disciplinary decisions; for example, whether to overlook a particular incident or episode, whether to discharge a serviceman, and whether and how to place restraints on a soldier's off-base conduct.  But as we noted in *Chappell* v. *Wallace*, such "'complex, subtle, and professional decisions as to the composition, training, . . . and control of a military force are essentially professional military judgments.'"  462 U. S., at 302, quoting *Gilligan* v. *Morgan*, 413 U. S. 1, 10 (1973).

---

[3] It is immaterial that this suit was brought by a representative of the serviceman; indeed, *Feres* itself was brought by an executrix.  *Feres* v. *United States* 340 U. S. 135, 136–137 (1950).

[4] Although no longer controlling, other factors mentioned in *Feres* are present here.  It would be anomalous for the Government's duty to supervise servicemen to depend on the local law of the various states, see *id.,* at 143, 146; and the record shows that Private Shearer's dependents are entitled to statutory veterans' benefits.  See *id.*, at 144–145.

Finally, respondent does not escape the *Feres* net by focusing only on this case with a claim of negligence, and by characterizing her claim as a challenge to a "straightforward personnel decision." Tr. of Oral Arg. 37. By whatever name it is called, it is a decision of command. The plaintiffs in *Feres* and *Stencel Aero Engineering* did not contest the wisdom of broad military policy; nevertheless, the Court held that their claims did not fall within the Tort Claims Act because they were the *type* of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness. Similarly, respondent's attempt to hale Army officials into court to account for their supervision and discipline of Private Heard must fail.

## III

Special Assistant to the Attorney General Holtzoff, testifying on behalf of the Attorney General, described the proposed Federal Tort Claims Act as "a radical innovation" and thus counseled Congress to "take it step by step." Tort Claims Against the United States: Hearings on H. R. 7236 before Subcommittee No. 1 of the House Committee on the Judiciary, 76th Cong., 3d Sess., 22 (1940). We hold that Congress has not undertaken to allow a serviceman or his representative to recover from the Government for negligently failing to prevent another serviceman's assault and battery. Accordingly, the judgment of the Court of Appeals is

*Reversed.*

JUSTICE POWELL took no part in the decision of this case.

JUSTICE BRENNAN, with whom JUSTICE BLACKMUN and JUSTICE STEVENS join, concurring in part and concurring in the judgment.

I do not join Part II–A of THE CHIEF JUSTICE's opinion. I do, however, join Part II–B and therefore concur in the judgment.

JUSTICE MARSHALL, concurring in the judgment.

While I am not a firm supporter of *Feres* v. *United States*, 340 U. S. 135 (1950), I can support Part II–B of the Court's opinion and concur in the judgment.