**Arlene A. JOHNSON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 89–2633.**

United States District Court, District of Columbia.

Jan. 11, 1993.

Edward Wright, Washington, DC, Irving Starr, Arlington, VA, for plaintiff.

Thomas Rees, Asst. U.S. Atty., Washington, DC, for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This is the second time defendant has moved to dismiss the present action. In a Memorandum Order of April 12, 1990, we denied defendant's prior motion. *See Johnson v. United States*, 735 F.Supp. 1, 4 (D.D.C.1990). We now consider defendant's Renewed Motion to Dismiss and Third Motion to Dismiss and plaintiff's Motion for Partial Summary Judgment. For the reasons given below, we grant plaintiff's motion and deny defendant's motions.

### I. *Background*

The facts of this case are not in dispute and are discussed here only summarily since we reviewed them at length in our prior Memorandum Order. *See Johnson*, 735 F.Supp. at 2. Briefly, plaintiff Arlene Johnson, a member of the United States Army, brought this suit under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680 (1988) ("FTCA"), alleging negligence on the part of physicians and personnel at the Walter Reed Army Medical Center ("WRAMC"). On September 9, 1986, plaintiff donated blood during a blood drive held at WRAMC. On that date, blood samples were also taken for blood tests. Plaintiff was informed one month later, on October 8, 1986, that her blood tests had shown that she had tested positive for acquired immune deficiency syndrome ("AIDS").

WRAMC doctors took a second blood sample in October 1986 for further testing. Although the results of the second test came back only weeks later and showed that plaintiff did not, in fact, have the AIDS virus, her test was misfiled and she was not informed of the new results until February 1987. Meanwhile, in November 1986, plaintiff discovered she was pregnant and decided to have an abortion having been previously told by WRAMC physicians that the child would be born with AIDS. After she was informed in February 1987 that she did not in fact have the AIDS virus, plaintiff filed this suit under the FTCA to recover damages for undergoing an unwanted abortion and for other pain and suffering.

In its prior motion to dismiss, defendant maintained that the present action should be dismissed pursuant to the *Feres* doctrine. Under that doctrine, claims raised by service members under the FTCA are barred if they "arise out of or are in the course of activity incident to service." *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). Defendant alleged that plaintiff's claim was barred because she was a member of the United States Army at WRAMC and because the blood drive was "incident to service."

In our April 1990 Order, we denied defendant's motion on the grounds that plaintiff's voluntary donation was not barred for the following reasons: plaintiff was under the "compulsion of no orders;" the blood drive was open to the public and not a "military event;" plaintiff was not receiving medical treatment; and finally, plaintiff was receiving no alternative compensation for her injuries through other channels. *Johnson*, 735 F.Supp. at 3.

Since we issued that Order, the parties have conducted discovery and defendant has again moved to dismiss the case based on new facts which defendant alleges warrant dismissal. Specifically, defendant has raised the fact that plaintiff was still subject to military orders and discipline while at the blood drive. *See* Defendant's Renewed Motion to Dismiss ("Defendant's Motion") at 2–3. Defendant also notes evidence of military involvement: the blood drive was conducted pursuant to an Army regulation which limits donors to "military personnel, their dependents, and civilian Federal employees" and encourages blood drives for the purpose of maintaining blood supplies at military medical facilities. *See* Defendant's Motion at 3; Appendix to Defendant's Motion ("App.") at 10. Plaintiff subsequently filed a Motion for Partial Summary Judgment, contending that the *Feres* bar still does not apply.

Despite the additional evidence, we still agree with plaintiff that her claim is not the type of claim that was intended to be barred by *Feres*.

## II. *Discussion*

█ As we explained in our prior Order, the *Feres* doctrine is predicated on three broad rationales: the desire for a uniform, federal compensation system, the availability of statutory veterans' benefits, and the fear of intrusion into military affairs. *See Johnson*, 735 F.Supp. at 2–3 (citing *United States v. Johnson*, 481 U.S. 681, 689, 107 S.Ct. 2063, 2068, 95 L.Ed.2d 648 (1987)). Of these, the third factor has been deemed the most important.

In the last analysis, *Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Torts Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty.' *United States v. Muniz*, 374 U.S. 150, 162, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963) (citing *United States v. Brown*, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954)). *See also Hunt v. United States*, 636 F.2d 580, 599 (D.C.Cir.1980) ("the protection of military discipline ... serves largely if not exclusively as the predicate for the *Feres* doctrine ... Only this factor can truly explain the *Feres* doctrine and the crucial line it draws.").

The third rationale behind *Feres* also stems from the concern that permitting service-related claims might "require[ ] the civilian court to second-guess military decisions." *United States v. Shearer*, 473 U.S. 52, 57, 105 S.Ct. 3039, 3043, 87 L.Ed.2d 38 (1985) (citing *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977)). Allowing such claims might "involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Id.* 473 U.S. at 59, 105 S.Ct. at 3043.

█ As we stated in our prior Order, we do not find that the present case implicates any of these concerns.[1] Review of the

---

1. Defendant notes that the Supreme Court in *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), has counselled against determining whether a suit is barred by *Feres* by questioning "the extent to which particular suits would call into question military discipline and decisionmaking." *See* Defendant's Reply at 11 (citing *Stanley*, 483 U.S. at 682, 107 S.Ct. at 3063). The *Stanley* Court, instead, noted that the "incident to service" test provided a bright line test which would not intrude into military matters. 483 U.S. at 683, 107 S.Ct. at 3063.

However, as many courts have noted, the "incident to service" test has never been clearly defined. *See, e.g., Johnson v. United States*, 704 F.2d 1431, 1436 (9th Cir.1983) ("many courts in applying *Feres* have clouded the incident to service distinction with a myriad of confusing interpretations."). Ultimately, the only possible determination is whether "plaintiff's admitted

alleged original wrongful advice and subsequent mishandling of plaintiff's paperwork surrounding her blood tests does not involve us in "sensitive military affairs" or require that we "second-guess military decisions," *Shearer*, 473 U.S. at 59, 105 S.Ct. at 3043. Plaintiff's activity did not implicate military goals or sensitive military testing as would participation in covert testing of military weapons or defense mechanisms, for example.[2]

Nor does the present suit impinge on military discipline or effectiveness. Although plaintiff was a member of the United States Army and was on active duty when she donated blood at the blood drive, plaintiff's job duties were civilian in nature. From November 1985 through March 1987, plaintiff was employed in the Personnel Management Division at WRAMC, processing paperwork for persons being transferred. *See* Deposition of Arlene Johnson at 11. Her claim would therefore have no impact on military discipline or affect relations between "soldiers" and their "superiors."

Plaintiff's participation in the blood drive is best viewed, instead, as a civilian activity. The blood drive itself was open to Federal civilian employees. *See* App. at 10. It was conducted by a civilian nurse and clerk. *See* Deposition of Arlene A. Johnson at 24. Approximately one-quarter of those donating blood were civilians. *Id.* at 25. Finally, plaintiff was under no military duty to donate blood, but chose to do so entirely voluntarily, much as she might choose to participate in a clothes or food drive. In attending the blood drive, we therefore find that plaintiff was in no different position from a civilian employee engaging in the same activity.

Where a plaintiff has been engaged in an activity of a civilian nature, the *Feres* bar has not been applied. *See, e.g., Johnson v. United States*, 704 F.2d 1431, 1439 (9th Cir.1983) (*Feres* held not to bar claim by

officer who had been bartending at on-base officer's club because plaintiff stood "in exactly the same position as a civilian employee."). *See also Parker v. United States*, 611 F.2d 1007 (5th Cir.1980), *reh. den.*, 615 F.2d 919 (5th Cir.1981) (recovery by serviceman allowed where plaintiff was on base for the purpose of moving from his on-base to his off-base home). Accordingly, *Feres* should not bar the present claim.

Defendant further maintains that plaintiff's claim should be barred as a claim for medical malpractice. As we noted in our prior Order, claims for medical negligence in military facilities generally have been prohibited by *Feres*. *See Johnson*, 735 F.Supp. at 3 (citing *Feres*, 340 U.S. 135, 71 S.Ct. 153 (1950) and *Appelhans v. United States*, 877 F.2d 309, 311–312 (4th Cir. 1989)). The underlying theory for barring such suits is that plaintiff received medical treatment as a benefit of his or her military service, and such claims are therefore deemed "incident to service." *See, e.g. Johnson*, 704 F.2d at 1438–39 ("The one factor that best explains the results in these cases is that plaintiffs had access to medical ... benefits only because of their status as military personnel.")

As explained above, however, plaintiff's access to the blood drive was not contingent on her military status. Had plaintiff been a Federal civilian employee, she also would have been able to participate in the drive and, in our judgment, would have a valid cause of action under the FTCA. Moreover, the donation of blood cannot reasonably be likened to receipt of medical treatment or to a benefit incident to service. Ms. Johnson was not *receiving* a benefit from the military in this situation. Rather, she *contributed* a vital service to the military. The mere fact that she happened to be employed by the U.S. Army at the time should not penalize her.

---

activities at the time of the negligence are of the sort that would directly implicate the interests the *Feres* doctrine was designed to protect." *Id.*

**2.** The present situation is distinguishable from that presented in *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987),

for example, in which *Feres* was held to bar claims filed by a master sergeant against the Army for secretly administering doses of LSD to plaintiff while he participated in a test of protective defenses against chemical warfare.

### III. *Conclusion*

Admittedly, application of the *Feres* doctrine has produced harsh results by immunizing negligent conduct of agents of the military when the injured claimant was engaged in an activity "incident to service," a term which is not self-defining. *Feres* has been repeatedly criticized over the years and attempts to vacate it or soften its impact through Congressional action have not succeeded. We, while recognizing its validity, are under no obligation to stretch its application. Under the facts of the present case, which are unusual, we decline to extend the protection of *Feres* to bar the plaintiff's claim for undisputed acts of negligence. Plaintiff's voluntary and generous participation in the blood drive achieved no medical or other benefit for herself nor did her injuries "arise out of or are in the course of activity incident to service."