STATEMENT SUR DENIAL OF THE PETITION FOR REHEARING
BECKER, Chief Judge.
The panel has concluded that the O’Neill family’s wrongful death claim is barred by the doctrine announced in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) and its progeny. I do not believe that it is.
The government relies heavily on the opinion in United States v. Shearer, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), where the Supreme Court held that the family of a service member could not recover under the Federal Tort Claims Act (“FTCA”) for the death of their son who was murdered by a fellow service member. The facts of this case, however, are quite different from those in Shearer. So far as we can tell from the published opinions in Shearer, the men involved served together; their relationship was formed on this basis; and the court reasonably concluded that the injury occurred “incident to service.” In contrast, the relationship between Kerryn O’Neill and her assailant was a purely personal one.** Indeed, it is difficult for me to imagine anything less incident to service than being attacked by an ex-lover while sitting at home watching a movie with a friend. Surely, Smith would have killed O’Neill even if she was a civilian at the time.
The government urges that the primary rationale for the Feres doctrine—the desire to prevent the judiciary from second-guessing sensitive military decisions—is implicated in this case. However, the gravamen of the Feres doctrine is that the government is immune from suit when injuries occur incident to service. If a civilian friend of O’Neill’s had been murdered by Smith, the same concerns regarding second-guessing military judgments would be implicated, but I do not believe that we would dismiss the lawsuit. Similarly, where a plaintiff has engaged in an activity of a civilian nature, the “incident to service” test is not satisfied and the Feres bar has not been applied. See e.g., Johnson v. United States, 704 F.2d 1431, 1439 (9th Cir.1983).
In Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the government made an argument similar to that raised here, that because military decisions would be questioned suit should be barred under the FTCA. The Supreme Court ruled that the rationale was irrelevant if the incident to service test was not satisfied:
The Government envisages dire consequences should we reverse ... [a] battle commander’s poor judgment, an army surgeon’s slip of hand, a defective jeep ... all would ground tort actions against the United States. But we are dealing with an accident which had nothing to do with the [plaintiffs’] army careers, injuries not caused by their service except in the sense that all human events depend upon what has already transpired. Were the accident *566 incident to the [plaintiffs’] service, a wholly different case would be presented.
Id. at 52, 69 S.Ct. at 920. In Feres and Shearer, the court was presented with “wholly different cases,” cases where the service members’ injuries occurred incident to their service. However, here, where decedent’s injuries were wholly unrelated to her military service, we should follow the Supreme Court’s direction in Brooks and not be swayed by the military judgment rationale. Because I think that this case has been wrongly decided, and because of the importance of the issue, I vote for rehearing en banc (see Third Circuit I.O.P. 9.3.1). I acknowledge that under my view there will occasionally be cases in which so-called second guessing occurs, but the Supreme Court’s jurisprudence does not extirpate every incarnation of that phenomenon, see Brooks, supra.
In the decades following the decision in Feres, the case was subjected to considerable criticism from both the courts and the academy. In United States v. Johnson, 481 U.S. 681, 700, 107 S.Ct. 2063, 2074, 95 L.Ed.2d 648 (1987), Justice Sealia was joined by three other justices in a dissent in which he remarked that “Feres was wrongly decided and heartily deserves the “widespread, almost universal criticism’ it has received.” (citing Agent Orange Product Liability Litigation, 580 F.Supp. 1242, 1246 (E.D.N.Y.1984)). In Peluso v. United States, 474 F.2d 605 (3d Cir.1973) (per curiam), we expressed the view that Feres was wrongly decided and the hope that the Supreme Court would reverse it, observing that the “facts pleaded here, if true, cry out for a remedy.” Id. at 606. And in Hinkie v. United States, 715 F.2d 96, 97 (3d Cir.1983), we dismissed a lawsuit under the Feres bar, but only after noting that “[w]e are forced once again to decide a case where ‘we sense the injustice ... of [the] result.’” Moreover, as I document in the margin, scholarly criticism of the doctrine is legion.***
In the last decade, however, these voices of courts and commentators have died down. Everyone seems to have given up. But the harshness of the doctrine remains. Just look at the injustice suffered by the family of Kerryn O’Neill. Bolstered by the oft-quoted words of Justice Frankfurter:
Wisdom too often never comes, and so one ought not to reject it merely because it comes late.
Henslee v. Union Planters Bank, 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259 (1949), I urge the Supreme Court to grant certiorari and reconsider Feres. Judge Sloviter and Judge McKee join in this Statement.

 O’Neill, a Naval officer, was murdered by her former fiance. Ensign George Smith. O’Neill met Smith at the United States Naval Academy where they both attended school. After graduation O’Neill was assigned to a naval base in San Diego. Coincidentally, Smith was sent to the same base several months later in preparation for a tour of duty on a submarine. Shortly after Smith's arrival in San Diego, O’Neill broke off their engagement and he began to stalk her. One night while O’Neill was sitting in her on-base apartment watching a movie with a friend, Smith came to her building, shot and killed her and her companion and then killed himself. Smith had been given a battery of psychological tests to determine his psychological fitness for submarine duty. On this "Subscreen” test he had scored four standard deviations above normal levels (in the 99.99 percentile) for aggressive/destructive behavior. He had also scored more than two standard deviations above normal levels in six other categories—including impulsive and manipulative behavior. Under Naval procedures, these results should have been forwarded to the Department of Psychiatry at the Naval Hospital for a full psychological evaluation. O’Neill’s family, with considerable force, urges that the Navy was negligent in failing to follow-up on these extreme test results.

 See, e.g., Jonathan P. Tomes, Feres to Chappell to Stanley: Three Strikes and Servicemembers Are Out, 25 U. Rich. L.Rev. 93 (1990); Barry Bennett, The Feres Doctrine, Discipline and the Weapons of War, 29 St. Louis U.L.J. 383 (1984); David E. Seidelson, The Feres Exception to the Federal Tort Claims Act: New Insight Into an Old Problem, 11 Hofstra L.Rev. 629 (1983); Thomas M. Gallagher, Note, Servicemembers’ Rights Under the Feres Doctrine: Rethinking' Incident To Service’ Analysis, 33 Vill. L.Rev. 175 (1988); David S. Schwartz, Note, Making Intramilitary Tort Law More Civil: A Proposed Reform of the Feres Doctrine, 95 Yale L.J. 992 (1986); William S. Meyers, Comment, The Feres Doctrine: Has It Created Remediless Wrongs For Relatives of Servicemen?, 44 U. Pitt. L.Rev. 929 (1983); Note, From Feres to Stencel: Should Military Personnel Have Access to FTCA Recovery?, 77 Mich. L.Rev. 1099 (1979);