ROSENBAUM, Circuit Judge,
concurring specially:
In Oliver Twist, Mr. Bumble famously lamented, “If the law supposes that, the law is a ass — a idiot.” [1] Every once in a while, a ease comes along where some might find Mr. Bumble’s philosophy of the law apt. This is one of those cases.
Here, more than 100 federal law-enforcement-agency employees and their family members were swindled out of millions and millions of dollars in their retirement savings by Kenneth Wayne McLeod — a man these plaintiffs’ agencies brought onto federal property for the express purpose of, ironically, financially educating agency employees. Because the agencies allegedly did not follow rules prohibiting speakers from soliciting federal employees and from dispensing personal financial advice, among other safeguards, McLeod was able to abuse his position and take advantage of the federal employees’ trust in their agencies. Now, troublingly, the plaintiffs have no recourse because sovereign immunity precludes suit against the government in these circumstances.
I agree that the panel correctly reaches this same conclusion. But I write separately in an effort to prevent the harsh exception to the Federal Tort Claims Act’s (“FTCA”) waiver of sovereign immunity from being construed in the future any more broadly than it has been written and that the Supreme Court has interpreted it. In particular, I respectfully disagree with the panel opinion’s understanding of Sheridan v. United States, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 852 (1988), and with dicta from our decision in Zelaya v. United States, 781 F.3d 1315 (11th Cir. 2015).
I.
As I have noted, I agree that the panel correctly concluded that the FTCA’s waiver of sovereign immunity does not apply here. As relevant in this case, the FTCA’s *1311 exception from its waiver of sovereign immunity bars any claim “[ajrising out of ... misrepresentation, deceit, or interference with contract rights.” 28 U.S.C. § 2680(h). Significantly, this language includes claims arising out of not only intentional misrepresentation but also negligent misrepresentation. See United States v. Neustadt, 366 U.S. 696, 710, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).
When we consider whether this excep-. tion applies, we must identify the true “essence” of the plaintiffs claim, regardless of how the plaintiff may have pled her cause. JBP Acquisitions, LP v. United States ex rel. FDIC, 224 F.3d 1260, 1264 (11th Cir. 2000) (citation omitted). We have explained that the “essence” of negligent misrepresentation “involves the government’s failure to use due care in obtaining and communicating information.” Id. (citing Block v. Neal, 460 U.S. 289, 296, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983); Neustadt, 366 U.S. at 706-07, 81 S.Ct. 1294). And, more specifically, a claim is for negligent misrepresentation “when the loss suffered by the injured party is caused by the breach of ... the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs.” Neustadt, 366 U.S. at 706, 81 S.Ct. 1294.
Here, all of the plaintiffs’ claims are, at their essence, either claims of intentional misrepresentation or claims of negligent misrepresentation. To the extent that the complaint asserts claims against McLeod, these claims rely, at bottom, on the fact that McLeod defrauded them through material misrepresentations and omissions about what he was doing with their money.
And to the extent that the complaint makes claims against government employees for their independent negligence in vetting and investigating McLeod, in allowing him to solicit employees and offer personal financial investment advice, and in otherwise failing to follow regulations and government policy in permitting McLeod to speak at official agency-sponsored events and on federal property, all of these claims sound in negligent misrepresentation. This is necessarily so because even setting aside McLeod’s intentional misrepresentations, all of plaintiffs’ losses may be traced to the government’s alleged “breach of ... the duty to use due care in obtaining and communicating [financial-literacy] information upon which [the plaintiffs] ... reasonably [could have been] expected to rely in the conduct of [their] economic affairs,” id.-, that is, to the government’s own negligent misrepresentations.
Indeed, the entire purpose of the government’s financial-literacy program was to financially educate federal employees in the hope that they would rely on the information and increase their retirement savings. See 5 U.S.C. § 8350 note on Pub. L. 108-469, § 2, 118 Stat. 3892 (2004).[2] Had the government followed its own policies and regulations that were put in place to *1312 ensure the use of due care in communicating financial-literacy information, McLeod either would not have been permitted to speak or, at the very least, would not have been allowed to solicit employees and offer them personal financial investment advice, regardless of the content of that advice. Either way, the plaintiffs would not have been defrauded by McLeod.
So all of plaintiffs’ claims are, at their essence, claims for either intentional or negligent misrepresentation. As a result, § 2680(h), by its terms, precludes them all.
II.
For this same reason, this case is also distinguishable from Sheridan. There, as the panel correctly notes, an obviously drunken off-duty serviceman fired several shots at the plaintiffs after government employees allowed him to leave a naval hospital with a loaded rifle in his possession. The plaintiffs sued the government for the employees’ negligence in allowing the serviceman to leave the hospital without reporting the situation.
Section 2680(h) excepts assault and battery from the FTCA’s waiver of sovereign immunity, but it does not except negligence. So, like McLeod’s intentional misrepresentations here, the assailant’s tort in Sheridan would have been excluded from the FTCA’s waiver, even had the assailant been acting in the scope of his government employment.
But notably, unlike misrepresentation, assault and battery has no negligent counterpart. And the government employees who let the drunken, armed assailant go without trying to stop him and without reporting the incident engaged in a separate act of negligence, not assault and battery or any other tort that § 2680(h) excepts. So unlike the acts of the government employees here who engaged in the excepted tort of negligent misrepresentation independent of McLeod’s intentional misrepresentations, the acts of the government employees in Sheridan were not protected by sovereign immunity under the terms of § 2860(h). See Sheridan, 487 U.S. at 401, 108 S.Ct. 2449.
This is where I would end my discussion of this case and of Sheridan: unlike in Sheridan, the essence of the government employees’ acts in this case constituted an excepted tort under § 2680(h) — that of negligent misrepresentation. As a result, the FTCA bars recovery here.
But the panel’s interpretation of Sheridan goes further. And I am concerned that some of what the panel says about Sheridan could be broadly construed to impose limitations that Sheridan did not on the FTCA’s waiver of sovereign immunity. For that reason, I think it important to address two points in the panel’s Sheridan discussion.
First, I am concerned that the panel’s interpretation of Sheridan may be read to mistakenly suggest that Sheridan’s rule allowing claims against government employees for non-excepted torts applies only when the excepted tortfeasor (in the position of the drunken serviceman in Sheridan or McLeod here) did not act within the scope of government employment. And that would be in direct conflict with what Sheridan actually says.
In fact, the government-employee status of the excepted tortfeasor (in the position of the drunken serviceman in Sheridan or McLeod here) makes no difference to whether Sheridan’s rule applies. The Supreme Court expressly said so: “[the assailant serviceman’s] employment status is irrelevant to the outcome” of the case. Sheridan, 487 U.S. at 403 n.8, 108 S.Ct. 2449; see also id. (“Because ... [the assailant serviceman’s] employment status ... has [no] bearing on the basis for petition *1313 ers’ claim for money damages, [§ 2680(h) ] is not applicable in this case.”)- Rather, in and of itself, the excepted tort (that directly inflicts the .injuries) — regardless of whether a government employee acting within the scope of his duties committed it — does not preclude liability against the government for conduct that is “entirely independent” of the tortfeasor’s employment status. Id. at 401, 108 S.Ct. 2449.
So even accepting the complaint’s allegations that McLeod was a government employee and that he acted within the scope of his employment, McLeod’s employment status, in and of itself, does not provide a basis under Sheridan for rejecting plaintiffs’ claims based on other government employees’ alleged breaches of a separate duty to follow government regulations and policy. Instead, plaintiffs’ claims cannot succeed because the independent legal foundation of those claims against the responsible government agencies finds its basis in negligent misrepresentation, which is itself an excepted tort — without reference to McLeod’s intentional tort of intentional misrepresentation.
Second, the panel opinion describes the two theories that the Supreme Court discussed in Sheridan to explain how liability might be imposed against government employees who negligently allowed an intentional tortfeasor to commit his tort. See Op. at 1309-10. As the panel correctly notes, the Supreme Court relied exclusively on the second theory.
Nonetheless, the panel alternatively analyzes this case under the first Sheridan theory. It notes that “McLeod, who committed the intentional tort of misrepresentation, is akin to the servicemember, who committed the intentional tort of assault. Under the first theory, [McLeod’s] individual involvement would not give rise to Government liability, but antecedent negligence by Government agents could[.]” Id. at 1309. (quoting Sheridan, 487 U.S. at 399, 108 S.Ct. 2449). Ultimately, though, the panel rejects liability here because “this Circuit has not adopted this theory, and we have been given no good reason to do so today.” Id.
In my view, we need not reach this consideration. Even if Sheridan's, first theory were binding law, it simply would not apply here. As I have noted, the government employees here (other than McLeod) allegedly engaged in negligent misrepresentation, which is an excepted tort, regardless of whether Sheridan’s first theory is valid. For that reason alone, the government employees’ antecedent negligence at issue here could not give rise to government liability under the FTCA, and Sheridan’s first theory cannot help plaintiffs.
III.
The panel opinion also invokes our decision in Zelaya in its discussion of causation. See Op. at 1306. And while Zelaya certainly contains some valid and important points, I think no discussion of Zela-ya’s causation analysis is complete without a word of caution about that opinion. Zela-ya states, “The phrase ‘arising out of [in § 2680(h)] is interpreted broadly to include all injuries that are dependent upon one of the listed torts having been committed.” 781 F.3d at 1333 (citing United States v. Shearer, 473 U.S. 52, 55, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985)). But, in my view, this statement of the law and the citation on which Zelaya bases it, are not good law for two reasons.
First, Zelaya relies solely on Shearer for that proposition. But Shearer’s entire discussion of § 2680(h)’s exceptions to the FTCA’s waiver, of sovereign immunity appears in Section II-A of the opinion — a part of the opinion that the majority did *1314 not adopt. See id. at 54-57, 105 S.Ct. 3039. Instead, the Supreme Court’s decision in Shearer was based solely on the Feres doctrine,[3] which precludes a soldier from recovering under the FTCA “for injuries which ‘arise out of or are in the course of activity incident to service.’ ” See Shearer, 473 U.S. at 57-59, 105 S.Ct. 3039. That doctrine, of course, has no application here.
And more significantly, the Court’s holding in Sheridan necessarily rejected the Shearer plurality’s analysis of the “arising out of’ language in § 2680(h). In Shearer, an Army private’s mother sued the Army for negligence because another serviceman kidnapped and murdered her son. She alleged that the Army knew that the other serviceman was dangerous, yet it failed to control him and to warn others that he was at large. In finding her claim barred, the plurality effectively concluded that where a plaintiffs damages “stem from” an excepted tort under § 2680(h), an action based on a non-excepted tort “arisfes] out of’ the excepted tort and likewise is prohibited. See id. at 55, 105 S.Ct. 3039.
But Sheridan held that § 2680(h) did not preclude the plaintiffs’ claims there, even though all their injuries were dependent on the drunken serviceman’s assault and battery — an excepted tort. Had the Shearer plurality’s reasoning ruled the day, Sheridan could not have reached this conclusion: though the plaintiffs alleged an independent cause of action for negligence against the government, the Shearer plurality would have concluded that their actual injuries “ar[ose] out of’ the drunken serviceman’s assault and battery and were thus barred. So it is clear that any suggestion that § 2680(h) bars all claims for which the injuries arose directly out of an excepted tort is overly broad, incorrect, and inconsistent with the governing law of Sheridan.
Fortunately, however, Zelaya’s suggestion in this regard is dicta, as our holding in Zelaya was actually based on the fact that all the plaintiffs’ claims there were, at their essence, claims for the excepted tort of misrepresentation. In light of the panel’s reliance on other aspects of Zelaya, I note this error in that opinion to prevent our opinion here from being viewed as endorsing all that Zelaya had to say.
IV.
The outcome in this case is troubling. Yet it is one that the law clearly requires. Nevertheless, I would limit any restraints this opinion could impose on future litigants by confining it to address only what is absolutely necessary. Here, that means holding only that § 2680(h) precludes plaintiffs’ claims because all of them are based on the excepted torts of either intentional misrepresentation or negligent misrepresentation.

. Charles Dickens, Oliver Twist, https://www. planetebook.com/ebooks/Oliver-Twistpdf, at 617 (last visited July 6, 2017).

. This note provides, in relevant part,
(c) Strategy. — As part of the retirement training offered by Office of Personnel Management under ... [this section], the Office, in consultation with the Board, shall-—
(1) Not later than 6 months after ... [December 21, 2004], develop and implement a retirement financial literacy and education strategy for Federal employees that—
(A) shall educate Federal employees on the need for retirement savings and investment; and
(B) provide information related to how Federal employees can receive additional information on how to plan for retirement and calculated what their retirement investment should be in order to meet their retirement goals....

. Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).