**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ISAAC CASTRO, as Personal Representative of the Estate of Sara Castromata, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant-Appellee. | No.    16-16490 <br><br> D.C. No. 3:16-cv-00501-MEJ <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Maria-Elena James, Magistrate Judge, Presiding

Argued and Submitted December 6, 2017
San Francisco, California

Before:  RAWLINSON and OWENS, Circuit Judges, and RICE,[**] Chief District Judge.

Petitioner-Appellant Isaac Castro (Castro) appeals from the district court's

dismissal of his complaint for lack of subject-matter jurisdiction. Tragically, Sara

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Thomas O. Rice, Chief United States District Judge for the Eastern District of Washington, sitting by designation.

Castromata (Castromata) was murdered by a fellow service member. Castro contends that the district court erroneously determined that the *Feres*[1] doctrine barred his claim for recovery under the Federal Tort Claims Act (FTCA).

Although the FTCA exposes the federal government to liability for tort claims "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, the judicially-created *Feres* doctrine limits the reach of the FTCA by precluding liability "for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146. The Supreme Court has articulated three policy rationales underlying the *Feres* doctrine, but we have consistently emphasized the particular importance of one: avoiding interference with the military disciplinary structure. *See Ritchie v. United States*, 733 F.3d 871, 874-75 (9th Cir. 2013).

Judicial reluctance to second-guess military discipline finds its genesis in "the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty." *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 671-72 (1977) (citation and alterations

---

[1]     *Feres v. United States*, 340 U.S. 135 (1950).

omitted). "[W]e have consistently barred claims under *Feres* to avoid examining acts of military personnel which were allegedly negligent with respect to other members of the armed services." *Ritchie*, 733 F.3d at 877 (citation and internal quotation marks omitted).

Castro's complaint, premised upon the allegedly negligent acts and omissions of the government that led to Castromata's death, "strikes at the core of the[] concerns" that the *Feres* doctrine aims to shelter. *United States v. Shearer*, 473 U.S. 52, 58 (1985) (concluding that *Feres* barred negligence action against the federal government where a service member kidnapped and murdered another off-duty service member); *see also Estate of McAllister v. United States*, 942 F.2d 1473, 1474, 1477-78 (9th Cir. 1991) (analogizing to *Shearer* and holding that *Feres* barred action stemming from a fatal attack by a service member who was previously diagnosed as schizophrenic and potentially dangerous). Castro's claim "calls into question basic choices about the discipline, supervision, and control of a serviceman," and is "the type of claim[] that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." *Shearer*, 473 U.S. at 58-59 (emphasis omitted). Accordingly, the *Feres* doctrine divests the federal courts of jurisdiction over this action. *Id.* at 59.

**AFFIRMED.**