# SUPREME COURT OF THE UNITED STATES

KARI BECK, PERSONAL REPRESENTATIVE OF THE ESTATE
OF CAMERON GAYLE BECK, ET AL. *v.*
UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 24–1078.   Decided November 24, 2025

The petition for a writ of certiorari is denied. JUSTICE
GORSUCH would grant the petition for a writ of certiorari.

Statement of JUSTICE SOTOMAYOR respecting the denial
of certiorari.

As my colleague rightly explains, *Feres* v. *United States*,
340 U. S. 135 (1950), is a difficult decision to justify.  See
*post*, at 3–5 (THOMAS, J., dissenting from denial of certio-
rari).  Since it was decided 75 years ago, *Feres*'s atextual
expansion of the Federal Tort Claims Act (FTCA), 28
U. S. C. §2671 *et seq.*, has garnered near-universal criti-
cism; has caused significant confusion; and has deprived
servicemembers and their families of redress for serious
harms they have suffered during service to this country.
*Post*, at 3–5, 7–8.  Like in this case, *Feres* has worked such
harms even in circumstances far removed from the ex-
pected risks of military service.  It has, for example, barred
recovery for claims arising from medical malpractice, sex-
ual assault, and (as here) car accidents, even when those
harms occur on U. S. soil, bear little relation to the military
itself, and just as easily could have befallen any American
civilian.  See *Feres*, 340 U. S., at 137; *post*, at 7–8.

Even so, out of respect for the Court's rules of *stare deci-
sis*, and in recognition of the reliance interests that *Feres*
has generated, I vote to deny this petition for a writ of cer-
tiorari.  Beyond the "special justification" that is needed to
overrule any of our precedents, *stare decisis* has "enhanced

force" on questions of statutory interpretation. *Kimble* v. *Marvel Entertainment, LLC*, 576 U. S. 446, 456 (2015). That is because, unlike with decisions of constitutional dimension, "Congress exercises primary authority" over statutory questions "and 'remains free to alter what we have done.'" *Michigan* v. *Bay Mills Indian Community*, 572 U. S. 782, 799 (2014); see *Global-Tech Appliances, Inc.* v. *SEB S. A.*, 563 U. S. 754, 765 (2011) (explaining the "'"special force"' . . . of *stare decisis* with regard to questions of statutory interpretation"). This "respect for Congress's decision not to intervene promotes the separation of powers by requiring interested parties to resort to the legislative rather than the judicial process to achieve their policy goals." *Groff* v. *DeJoy*, 600 U. S. 447, 474–475 (2023) (SOTOMAYOR, J., concurring). Moreover, the "justification for statutory *stare decisis* is especially strong" when Congress has considered but "spurned multiple opportunities to reverse" the Court's interpretation of a statute. *Id.*, at 475.

That is the case here. Congress has often considered legislation that would overrule or limit the *Feres* doctrine. See, *e.g.*, H. R. 1517, 112th Cong., 1st Sess., §4 (2011); S. 1347, 111th Cong., 1st Sess., §2 (2009); H. R. 2684, 107th Cong., 1st Sess., §1 (2001); S. 347, 100th Cong., 1st Sess. (1987). Indeed, Congress most recently did so in 2019, see S. 1790, 116th Cong., 1st Sess., §729 (amendment as passed in the House), but ultimately decided to provide payments for certain service-related medical-malpractice claims under the Military Claims Act rather than the FTCA, see National Defense Authorization Act for Fiscal Year 2020, §731, 133 Stat. 1457–1460, 10 U. S. C. §2733a.

Congress, therefore, is "undoubtedly aware of" the problems posed by *Feres* and "can change [*Feres*] if it likes." *Allen* v. *Milligan*, 599 U. S. 1, 39 (2023). "[U]ntil and unless it does, statutory *stare decisis* counsels our staying the course." *Ibid.* I write, however, to underscore that this important issue deserves further congressional attention,

without which *Feres* will continue to produce deeply unfair results like the one in this case and the others discussed in JUSTICE THOMAS's dissenting opinion. See *post*, at 7–8.

# SUPREME COURT OF THE UNITED STATES

KARI BECK, PERSONAL REPRESENTATIVE OF THE ESTATE OF CAMERON GAYLE BECK, ET AL. *v.* UNITED STATES

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

No. 24–1078.   Decided November 24, 2025

JUSTICE THOMAS, dissenting from denial of certiorari.

Air Force Staff Sergeant Cameron Beck was struck and killed by a civilian Government employee driving a Government vehicle. His surviving wife sued the Government under the Federal Tort Claims Act, 28 U. S. C. §2671 *et seq.*, which waives the Government's immunity for certain tort claims. The lower courts dismissed her claim based on an expansive reading of the *Feres* doctrine, a "judicially created" FTCA exception for injuries incident to military service. *Stencel Aero Engineering Corp.* v. *United States*, 431 U. S. 666, 674 (1977) (Marshall, J., dissenting) (citing *Feres* v. *United States*, 340 U. S. 135 (1950)). I have long called for overruling *Feres*, which lacks any basis in the FTCA's text. But we did not need to overrule *Feres* to get this case right because Staff Sergeant Beck was not killed incident to military service at all. He was killed in Missouri while off duty and going home to eat lunch with his family.

We should have granted certiorari. Doing so would have provided clarity about *Feres* to lower courts that have long asked for it. It would have resolved a Circuit split over whether, in applying *Feres*, courts should give special consideration to circumstances that implicate sensitive military affairs. And it would have allowed Staff Sergeant Beck's widow to recover for her husband's wrongful death consistent with both the FTCA and our precedent. I respectfully dissent from the denial of certiorari.

I

On April 15, 2021, Air Force Staff Sergeant Cameron Beck was off duty at Whiteman Air Force Base in Missouri and riding his motorcycle home for lunch with his family. A civilian federal employee driving a Government-issued van was distracted on her phone and turned in front of Beck. They collided, and Beck died at the scene. She was charged with criminal negligence. The driver pleaded guilty and later said that the accident was "'100 percent'" her fault. Record in No. 4:23–cv–00255 (WD Mo.), ECF Doc. 23–1, p. 2.

Kari Beck, for herself and her son, sued the driver's employer for the wrongful death of her husband in what ordinarily would have been an open-and-shut wrongful-death case. But in this case, the employer was the United States, which generally enjoys sovereign immunity from suit. Eighty years ago, Congress recognized this problem and expressly waived sovereign immunity in cases like this. The FTCA provides that the "United States shall be liable" for tort claims "in the same manner and to the same extent as a private individual under like circumstances," including in cases where "death was caused." 28 U. S. C. §2674.

The Government moved to dismiss Mrs. Beck's wrongful-death suit on the ground that the United States nonetheless was entitled to sovereign immunity. The District Court granted the Government's motion, and the Eighth Circuit affirmed. 125 F. 4th 887, 889 (2025). The dismissal relied on this Court's decision in *Feres*, which interpreted the FTCA to immunize the Government for injuries "incident to military service." 340 U. S., at 144. Mrs. Beck petitioned for review in this Court. Today, the Court denies her petition, so Mrs. Beck will recover nothing in tort for her husband's wrongful death.

## II
## A

The FTCA's text does not compel the denial of relief to Mrs. Beck. The FTCA makes the United States liable in tort "in the same manner and to the same extent as a private individual under like circumstances." §2674. The FTCA includes a military exception, but it applies only to claims arising out of "combatant activities . . . during time of war." §2680(j). It is inconceivable that driving home for lunch with one's family while off duty can be characterized as a wartime combatant activity. So, the exception does not apply in this case.

Instead, the lower courts dismissed Mrs. Beck's suit because of a broader exception that this Court created in *Feres*. According to *Feres*, the FTCA's waiver of sovereign immunity does not apply in any cases "where the injuries arise out of or are in the course of activity incident to [military] service," regardless of whether they arise out of wartime combatant activities. 340 U. S., at 146.

*Feres* did not base this doctrine on the text of the FTCA. It acknowledged that the FTCA's "exceptions might . . . imply inclusion of claims" involving servicemen, *id.*, at 138, because it excepts claims arising out of "combatant activities . . . during time of war," but not peacetime, §2680(j). It noted that earlier proposed versions of the FTCA almost invariably "expressly denied recovery to members of the armed forces; but the [FTCA] made no exception." *Id.*, at 139. And it admitted that the FTCA "contemplate[s] that the Government will sometimes respond for negligence of military personnel," *id.*, at 138, because it contemplates suits premised on the actions of "members of the military or naval forces" who "ac[t] in [the] line of duty," §2671.

The Government also recognized that the text posed a problem for its view. Shortly before *Feres*, it "conceded" that the FTCA's "language is sufficiently broad to cover" "claims arising out of the injury or death of members of the

armed forces . . . , and would *doubtless* do so in the absence
of" extratextual considerations. Brief for United States in
*Brooks* v. *United States*, O. T. 1948, No. 388 etc., p. 10 (em-
phasis added). And in *Feres* itself, the Government urged
the Court to overlook the FTCA's "broad language" and in-
stead base its decision on "consequences." Brief for United
States in *United States* v. *Griggs*, O. T. 1950, No. 31, p. 19;
see *Feres*, 340 U. S., at 136–138. In other words, if the en-
acted text controlled, there would be no *Feres* doctrine ex-
cepting injuries incident to service.

Over time, the Court has offered shifting policy rationales
for the *Feres* doctrine. See *Carter* v. *United States*, 604 U. S.
___, ___ (2025) (THOMAS, J., dissenting from denial of certi-
orari) (slip op., at 3–4). In its last word on *Feres* more than
38 years ago, the Court settled on three. See *United States*
v. *Johnson*, 481 U. S. 681, 688–691 (1987). First, "[t]he re-
lationship between the Government and members of its
armed forces is distinctively federal in character." *Id.*, at
689 (internal quotation marks omitted; alteration in origi-
nal). Second, the availability of "statutory disability and
death benefits" counsels against tort relief. *Ibid.* And third,
suits falling within the exception "are the *type[s]* of claims
that, if generally permitted, would involve the judiciary in
sensitive military affairs at the expense of military disci-
pline and effectiveness." *Id.*, at 690 (internal quotation
marks omitted; alteration in original). The Government
took the position that this third rationale is "the primary
basis for the *Feres* doctrine." Brief for United States in
*United States* v. *Johnson*, O. T. 1986, No. 85–2039, p. 6
(Johnson Brief).

The *Feres* doctrine has been "almost universally con-
demned by judges and scholars." *Carter*, 604 U. S., at ___
(opinion of THOMAS, J.) (slip op., at 5). Its three policy ra-
tionales do not make sense even on their own terms. *Id.*, at
___ (slip op., at 5–8). I have therefore long called for us to
revisit *Feres*. See *Clendening* v. *United States*, 598 U. S.

\_\_\_ (2022) (THOMAS, J., dissenting from denial of certiorari); *Doe* v. *United States*, 593 U. S. \_\_\_ (2021) (same); *Daniel* v. *United States*, 587 U. S. 1020 (2019) (same); *Lanus* v. *United States*, 570 U. S. 932 (2013) (same). I continue to believe that we should.

B

But we did not have to overrule *Feres* to grant certiorari and reverse here. Applying the doctrine's existing limits, Staff Sergeant Beck's death did not "arise out of . . . activit[ies] incident to" his military service, so *Feres* did not bar Mrs. Beck's suit. 340 U. S., at 146. The Court of Appeals acknowledged that Staff Sergeant Beck was "killed during off-duty hours" and that his death "arose out of non-military activities." 125 F. 4th, at 891. *Feres* itself distinguished cases in which the injured serviceman was "under compulsion of no orders or duty" and was "on no military mission." 340 U. S., at 146. Beck was not ordered on a military mission to go home for lunch with his family. So Mrs. Beck should have prevailed under *Feres*.

If *Feres* itself were not enough, the Court of Appeals' conclusion also conflicts with another of this Court's precedents. In *Brooks* v. *United States*, 337 U. S. 49, 50 (1949), decided a year before *Feres*, an off-duty serviceman driving with his family was struck and killed by a civilian Government employee driving a Government truck. This Court held that the suit could proceed under the FTCA. *Id.*, at 51. *Feres* did not overrule *Brooks*. On the contrary, they both asked whether the injury was "incident" to military service. See *Brooks*, 337 U. S., at 52; *Feres*, 340 U. S., at 146. If the Court does not want to overrule its precedents in this area, it should at least be willing to enforce them.*

_____

*Therefore, although I agree with JUSTICE SOTOMAYOR that *Feres* "is a difficult decision to justify," I respectfully disagree that "respect for the Court's rules of *stare decisis*" is a reason to deny the petition. See *supra*,

*Feres*'s policy rationales and this Court's later *Feres* precedents do not support immunizing the Government in this case either.  This case does not implicate "the primary basis for the *Feres* doctrine": "bar[ring] suits that 'would involve the judiciary in sensitive military affairs.'"  Johnson Brief 6.  This Court has said that *Feres* is "best explained by the peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits . . . were allowed for . . . negligent acts committed in the course of military duty."  *United States* v. *Shearer*, 473 U. S. 52, 57 (1985) (internal quotation marks omitted).  For that reason, "[t]he rule enunciated in *Feres* allows suit in most cases having no likely effect on military discipline and effectiveness."  Johnson Brief 20.  This is one such case: Mrs. Beck's allegation that a civilian governmental employee accidentally crashed into her husband does not "cal[l] into question basic choices about the discipline, supervision, and control of a serviceman."  *Shearer*, 473 U. S., at 58.

The Court of Appeals placed significant emphasis on facts that should not establish immunity.  It "pu[t] no special weight on whether resolution would involve the judiciary in sensitive military affairs" or scrutinize "military decision-making."  125 F. 4th, at 891.  Instead, it emphasized that Staff Sergeant "Beck was injured on-Base, while on active duty, and subject to immediate recall."  *Ibid.*  But this Court has explained that "the situs of the [injury] is not nearly as important as whether the suit requires the civilian court to second-guess military decisions, and whether the suit might impair essential military discipline."  *Shearer*, 473 U. S., at 57 (citation omitted).  And, on that point, the Court of Appeals did not deny that "resolution of this ordinary negligent-driving action would not require a court to

_____

at __ (statement of Sotomayor, J.).  The Court could have reversed here without overruling *Feres* or any other decision of this Court.

scrutinize or second guess military decision-making." 125 F. 4th, at 891. Further, the Court of Appeals emphasized that "Plaintiffs were entitled to military benefits." *Ibid.* But this Court has long held that "[p]rovisions in other statutes for disability payments to servicemen, and gratuity payments to their survivors, indicate no purpose to forbid tort actions under the Tort Claims Act" when it is otherwise evident that the injuries were not "incident to . . . service." *Brooks*, 337 U. S., at 52–53 (citation omitted).

## C

Lower courts are asking us for guidance on the *Feres* doctrine. They "have reached the unhappy conclusion that the cases applying the *Feres* doctrine are irreconcilable." *Costo* v. *United States*, 248 F. 3d 863, 867 (CA9 2001). They have told us that the *Feres* doctrine is now "an extremely confused and confusing area of law." *Taber* v. *Maine*, 67 F. 3d 1029, 1038 (CA2 1995); see also *Ortiz* v. *United States*, 786 F. 3d 817, 822 (CA10 2015) (Tymkovich, J.) ("With all of this confusion and lack of uniform standards, it comes as no surprise that the *Feres* doctrine . . . has received steady disapproval from the Supreme Court on down"). And they have called its outcomes "counter-intuitive," *Richards* v. *United States*, 176 F. 3d 652, 657 (CA3 1999), "unjust[,] and unwarranted," *Cutshall* v. *United States*, 75 F. 3d 426, 429 (CA8 1996). As I have explained, it is unsurprising that, with its atextual roots and vague rationales, "[t]he *Feres* doctrine cannot be reduced to a few bright-line rules" and has thus left courts in disarray. *Shearer*, 473 U. S., at 57; see also *Carter*, 604 U. S., at \_\_\_ (opinion of THOMAS, J.) (slip op., at 9) (collecting decisions).

The confusion in the lower courts has created a "split on whether and how to take into account the three policy justifications . . . that this Court [has] articulated" for the *Feres* doctrine. *Carter*, 604 U. S., at \_\_\_ (slip op., at 11); see *Ortiz*, 786 F. 3d, at 820–823. The Fourth and Ninth

Circuits "focus primarily" on whether the suit "would call into question military discipline and decisionmaking." *Carter*, 604 U. S., at ___ (slip op., at 11) (citing *Clendening*, 19 F. 4th, at 427; *Ritchie* v. *United States*, 733 F. 3d 871, 874–875 (CA9 2013); internal quotation marks omitted)). By contrast, the Eighth Circuit in Mrs. Beck's case put "no special weight on whether resolution would involve the judiciary in sensitive military affairs." 125 F. 4th, at 891. Other circuits, meanwhile, "do not consider 'the presence or absence of the [three] *Feres* rationales' *at all.*" *Carter*, 604 U. S., at ___ (slip op., at 11) (alteration in original) (citing *Tootle* v. *USDB Commandant*, 390 F. 3d 1280, 1282 (CA10 2004)).

"These differing approaches have led to divergent outcomes in factually similar cases." 604 U. S., at ___ (slip op., at 12). The Circuits have split on whether "sexual assault by another soldier" falls within the *Feres* doctrine. *Ibid.* (citing *Doe* v. *Hagenbeck*, 870 F. 3d 36, 49–50 (CA2 2017) (yes); *Spletstoser* v. *Hyten*, 44 F. 4th 938, 958–959 (CA9 2022) (no)). They have split on whether "injuries arising during recreational activities with military-owned equipment" fall within the *Feres* doctrine. 604 U. S., at ___ (slip op., at 12) (citing *Costo*, 248 F. 3d, at 864 (yes); *Regan* v. *Starcraft Marine, LLC*, 524 F. 3d 627, 645–646 (CA5 2008) (no)). And, after the Eighth Circuit's application of *Feres* here, they have split on whether a plaintiff who is injured in an off-duty, on-base car crash may sue. See *Schoenfeld* v. *Quamme*, 492 F. 3d 1016, 1017–1018, 1023–1026 (CA9 2007) (yes); 125 F. 4th, at 890–891 (no).

For more than 38 years, this Court has given no clarity to a doctrine it created. "The principal purpose of this Court's exercise of its certiorari jurisdiction is to clarify the law." *Caperton* v. *A. T. Massey Coal Co.,* 556 U. S. 868, 902 (2009) (Scalia, J., dissenting). In other contexts, when lower courts report confusion and are in disarray, this Court grants certiorari to "resolve the circuits' disagreement and

address our lower court colleagues' calls for clarification." *Medina* v. *Planned Parenthood South Atlantic*, 606 U. S. 357, 367 (2025). We should have done so in this case. I respectfully dissent from the denial of certiorari.