Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/27/2020 12:09 AM CST

Telena Moser, Personal Representative
of the Estate of Terry L. Berry, Jr.,
deceased, appellant, v. State
of Nebraska, appellee.

___ N.W.2d ___

Filed September 4, 2020.    No. S-19-726.

1. **Motions to Dismiss: Pleadings: Appeal and Error.** A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.

2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.

3. **Tort Claims Act: Appeal and Error.** Whether the allegations made by a plaintiff constitute a cause of action under the State Tort Claims Act or whether the allegations set forth claims which are precluded by the exemptions set forth in the act is a question of law, for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.

4. **Tort Claims Act: Immunity: Waiver: Appeal and Error.** An exception to the State's waiver of immunity under the State Tort Claims Act is an issue that the State may raise for the first time on appeal and that a court may consider sua sponte.

5. **Tort Claims Act: Legislature: Immunity: Waiver.** Through the State Tort Claims Act, the Legislature has waived the State's immunity with respect to certain, but not all, types of tort actions.

6. **Statutes: Immunity: Waiver.** Statutes that purport to waive the protection of sovereign immunity of the State or its subdivisions are strictly construed in favor of the sovereign and against the waiver. A waiver of sovereign immunity is found only where stated by the most express

language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.

7. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

8. **Assault: Political Subdivisions Tort Claims Act: Tort Claims Act.** Because the assault and battery exceptions of the State Tort Claims Act and the Political Subdivisions Tort Claims Act are nearly identical, cases construing the Political Subdivisions Tort Claims Act are applicable to cases under the State Tort Claims Act and vice versa.

9. **Public Policy.** While the doctrine of stare decisis is entitled to great weight, it is grounded in the public policy that the law should be stable, fostering both equality and predictability of treatment.

10. **Appeal and Error.** Remaining true to an intrinsically sounder doctrine better serves the values of stare decisis than following a more recently decided case inconsistent with the decisions that came before it.

Appeal from the District Court for Johnson County: Ricky A. Schreiner, Judge. Affirmed.

Thomas J. Monaghan and Rodney C. Dahlquist, Jr., of Dornan, Troia, Howard, Breitkreutz & Conway, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and James D. Smith, Solicitor General, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ.

Heavican, C.J.

## INTRODUCTION

Terry L. Berry, Jr., was incarcerated at the Tecumseh State Correctional Institution (TSCI), an institution under the control of the Nebraska Department of Correctional Services (DCS). On April 10, 2017, Berry was moved into a cell with Patrick W. Schroeder, another inmate at TSCI. Five days later, Schroeder strangled Berry, who died of his injuries on April 19.

Telena Moser, the personal representative of Berry's estate, filed a claim with the State of Nebraska under the State Tort Claims Act (STCA). After the statutory time for the State to respond to her claim had passed, Moser filed this suit on behalf of Berry's estate. The suit alleges negligence and wrongful death on the part of DCS. The district court dismissed Moser's complaint. Moser appeals.

We granted the State's motion to bypass the Nebraska Court of Appeals due to the public interest involved in this case and, as asserted in the State's petition to bypass, to address an apparent "inconsistency in this Court's opinions in applying the strict construction legal principles of the STCA exceptions to sovereign immunity as those legal principles have been explained and applied by this Court's more recent decisions," specifically in the context of the intentional tort exception.

We find that the State has immunity under the intentional tort exception to the STCA, and accordingly, we affirm the order dismissing Moser's suit, albeit under different grounds for immunity than those relied upon by the district court.

## BACKGROUND

In this case, the district court granted the State's motion to dismiss; therefore, the operative facts are those set forth in Moser's complaint. According to that complaint, Berry was incarcerated with DCS on November 20, 2015, after being convicted of second degree forgery and assault by a confined person. He was sentenced to 3 to 4 years' imprisonment.

Schroeder was convicted of first degree murder, use of a weapon to commit a felony, and six counts of second degree forgery. He was sentenced to life imprisonment and was committed to DCS on August 31, 2006. Schroeder had been committed to TSCI since 2007, and according to the complaint, he was known for "having a bad temper." Berry was also known for having behavioral issues and had been identified as "needing anger management programming."

On April 10, 2017, Schroeder was notified that he would need to move out of his cell and into a different unit and

that he would be "double bunked." Schroeder told staff that he would not accept being double bunked. Fifteen minutes before he was due to be moved, Schroeder was told that his new cellmate would be Berry. Schroeder objected, because "he knew Berry to have enemies [and be] talkative" and because Berry was "believed to be dirty." On that same day, Berry was notified that he was being moved and that "if he refused the move, [he] would be double bunked with another inmate."

On April 15, 2017, Schroeder physically attacked Berry, who was subsequently transported to a local hospital and then to a hospital in Lincoln, Nebraska. Berry was declared brain dead on April 17 and was removed from life support on April 19. An autopsy showed that Berry's cause of death was asphyxia due to strangulation.

On September 15, 2017, Moser filed an administrative claim under the STCA. No action was taken within 6 months. Moser filed this action on November 26, 2018. In it, she asserted three causes of action: (1) the State's negligence in breaching its duty to protect Berry from harms against which he was unable to prevent himself, (2) its negligence per se in failing to comply with "the requirements of [DCS] Administrative Regulation 210.01," and (3) wrongful death under Neb. Rev. Stat. § 30-809 et seq. (Reissue 2016).

The State filed a motion to dismiss for lack of subject matter jurisdiction under Neb. Ct. R. Pldg. § 6-1112(b)(1), specifically arguing that the discretionary function exception of Neb. Rev. Stat. § 81-8,219(1) (Reissue 2014) to the STCA gave the State immunity from suit. The State also argued that Moser failed to state a claim under § 6-1112(b)(6). The district court granted that motion, concluding that the State was immune from suit under § 81-8,219(1).

Moser appeals.

## ASSIGNMENTS OF ERROR

On appeal, Moser assigns that the district court erred in (1) finding that the mandatory safety regulations designed to

prevent inmate assaults were discretionary rather than mandatory, (2) finding that the decision by TSCI staff to "double bunk" Berry and Schroeder was a policy decision rather than an operational decision, (3) finding that the discretionary function exception applied to the decision to double bunk Berry with Schroeder and to maintain such housing despite warnings regarding Berry's safety, (4) finding that the State acted with due care when it placed Berry with Schroeder and when it maintained this housing despite warnings regarding Berry's safety, and (5) granting the State's motion to dismiss under § 81-2,219(1).

## STANDARD OF REVIEW

[1-3] A district court's grant of a motion to dismiss on the pleadings is reviewed de novo, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.[1] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[2] Whether the allegations made by a plaintiff constitute a cause of action under the STCA or whether the allegations set forth claims which are precluded by the exemptions set forth in the act is a question of law, for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.[3]

[4] An exception to the State's waiver of immunity under the STCA is an issue that the State may raise for the first time on appeal and that a court may consider sua sponte.[4]

---

[1] *Amend v. Nebraska Pub. Serv. Comm.*, 298 Neb. 617, 905 N.W.2d 551 (2018).

[2] *Id.*

[3] *Id.*

[4] *Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017).

## ANALYSIS

On appeal, Moser argues that the district court erred in granting the State's motion to dismiss. Her assignments of error center on the district court's finding that § 81-8,219(4) barred her claim.

[5] Through the STCA, the Legislature has waived the State's immunity with respect to certain, but not all, types of tort actions.[5] As pertinent here, the STCA waives the State's sovereign immunity for tort claims against the State on account of personal injury caused by the negligent or wrongful act or omission of any employee of the State, while acting within the scope of his or her office or employment, under circumstances in which the State, if a private person, would be liable to the claimant for such injury.[6]

But there are exceptions to the State's waiver of immunity. As relevant to this appeal, § 81-8,219 provides that the STCA shall not apply to the following:

> (1) Any claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute, rule, or regulation, whether or not such statute, rule, or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion is abused;

> . . . .

> (4) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contract rights.

The State argues, for the first time in its brief on appeal, that Moser's lawsuit is barred, not just by § 81-8,219(1)—the grounds argued below which the district court relied upon—but

---

[5] *Jill B. & Travis B. v. State*, 297 Neb. 57, 899 N.W.2d 241 (2017).

[6] See Neb. Rev. Stat. § 81-8,210(4) (Reissue 2014).

also by the intentional tort exception found in § 81-8,219(4). The State notes that this court is bound to construe statutes waiving the State's immunity strictly and in favor of the State and against the waiver, and it argues that the plain language of the intentional tort exception applies to "[a]ny claim arising out of assault [or] battery." The State suggests that we should adopt the reasoning of the concurrence filed in our recent decision in *Rutledge v. City of Kimball*[7] and overrule our earlier decision in *Doe v. Omaha Pub. Sch. Dist.*[8]

As an initial matter, we observe that this court may consider the State's contention that the exception set forth in § 81-8,219(4) is applicable.[9] We have held that "when a plaintiff's complaint shows on its face that a claim is barred by one of the exceptions [to the State's waiver of immunity], the State's inherent immunity from suit is a jurisdictional issue that an appellate court cannot ignore."[10]

[6,7] It is well settled that statutes that purport to waive the protection of sovereign immunity of the State or its subdivisions are strictly construed in favor of the sovereign and against the waiver.[11] A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.[12] Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[13]

---

[7] *Rutledge v. City of Kimball*, 304 Neb. 593, 935 N.W.2d 746 (2019).

[8] *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007).

[9] *Davis v. State, supra* note 4.

[10] *Id.* at 979, 902 N.W.2d at 186.

[11] *Jill B. & Travis B. v. State, supra* note 5.

[12] *Id.*

[13] *Id.*

As we noted in *Jill B. & Travis B. v. State:*[14]

The principle of strict construction predated the [STCA] and has been consistently followed after its adoption. We had long said that statutes authorizing suit against the State are to be strictly construed, since they are in derogation of the State's sovereignty. Following adoption of the [STCA], we emphasized that statutes in derogation of sovereignty should be strictly construed in favor of the State, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the State or its government of any of its prerogatives, rights, or remedies, unless the intention of the Legislature to effect this object is clearly expressed. We also said that because the State has given only conditional consent to be sued and there is no absolute waiver of immunity by the State, requirements of the [STCA] must be followed strictly. Our most recent pronouncements uphold these principles. Because the rationale for the intentional torts exception . . . has not always been clearly expressed, the rule of strict construction becomes critically important.

[8] Because the assault and battery exceptions of the STCA and the Political Subdivisions Tort Claims Act (PSTCA) are nearly identical, cases construing the PSTCA are applicable to cases under the STCA and vice versa.[15] Our case law on the assault and battery exception to this point has generally found immunity in cases where the actor committing the assault or battery was an employee or agent of the State, but not where the actor was a nongovernmental actor.

This court was presented with the intentional tort exception to the STCA in *Johnson v. State.*[16] In *Johnson*, an inmate with DCS filed a claim under the STCA, alleging that she

---

[14] *Id.* at 68-69, 899 N.W.2d at 251-52.

[15] See *Amend v. Nebraska Pub. Serv. Comm., supra* note 1.

[16] *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005).

was sexually assaulted by a DCS employee. We noted that the phrase "arising out of an assault or battery" was broader than the phrase "for assault or battery" and thus covered "'claims . . . that sound in negligence but stem from a battery.'"[17] We further found that the intentional tort exception applied and that the State was immune. We explained:

> Where the plaintiff's tort claim is based on the mere fact of government employment (such as a respondeat superior claim) or on the employment relationship between the intentional tort-feasor and the government (such as a negligent supervision or negligent hiring claim), the exception in § 81-8,219(4) applies and the State is immune from suit.[18]

We were again presented with the intentional tort exception in *Doe*, a case governed by the PSTCA involving a nongovernmental actor.[19] In *Doe*, a student sued a school district, alleging she was sexually assaulted by a fellow student during school hours and while on school property. Citing the U.S. Supreme Court's decision in *Sheridan v. United States*,[20] we held that the claim was not barred by the PSTCA because it was

> not based upon the assault itself, and [the plaintiff] could not prevail merely by proving that it occurred. Rather, [the plaintiff alleged] that *before* the alleged assault, [the school district] breached an independent legal duty, unrelated to any possible employment relationship between the assailant and [the school district], to take reasonable steps to prevent foreseeable violence from occurring on its premises. . . . The claim therefore does not arise from an assault, but, rather, from an alleged

---

[17] *Id*. at 320, 700 N.W.2d at 624.

[18] *Id*. at 323, 700 N.W.2d at 625.

[19] *Doe v. Omaha Pub. Sch. Dist., supra* note 8.

[20] *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988).

negligent failure to protect a student from a foreseeable act of violence.[21]

In 2011, we decided *Britton v. City of Crawford*.[22] There, the plaintiff's decedent was shot and killed by law enforcement. His estate filed suit against the city, which argued that it was immune from suit under the intentional tort exception to the PSTCA because the claim arose out of a battery.

We observed in *Britton*, as we had held in *Johnson*, that the phrase "arising out of an assault or battery" created a broader exemption than one for an assault or battery. We distinguished *Johnson*, noting that although the claims were based on the officers' government employment, the death of the plaintiff's decedent was not the result of negligent supervision or hiring. We ultimately concluded that the city had immunity from suit, noting that without

> the battery, there would have been no claim. No semantic recasting of events can alter the fact that the shooting was the immediate cause of [the decedent's] death and, consequently, the basis of [the] claim. Even if it is possible that negligence was a contributing factor to the [decedent's] death, the alleged negligence was inextricably linked to a battery.[23]

We used similar reasoning in *Jill B. & Travis B.*,[24] which involved immunity under § 81-8,219(5). That section provided an exception from immunity under the STCA for "any claim arising out of misrepresentation or deceit."[25] We held that the State was entitled to immunity, reasoning that "[n]o matter how the [plaintiffs] try to frame their complaint, their claim arises out of a misrepresentation. . . . '[A] plaintiff cannot

---

[21] *Doe, supra* note 8, 273 Neb. at 88, 727 N.W.2d at 456.

[22] *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011).

[23] *Id.* at 386, 803 N.W.2d at 518.

[24] *Jill B. & Travis B. v. State, supra* note 5.

[25] § 81-8,219(5).

circumvent the misrepresentation exception simply through artful pleading of [the] claims.'"[26]

We most recently addressed this issue in *Rutledge*, wherein the plaintiff alleged that a city employee had attacked and choked her in a building belonging to the city.[27] On appeal, the plaintiff relied on *Doe* to argue that the city was negligent in failing to protect her and the rest of the public from its employee.[28] We distinguished *Doe*, noting the absence of an allegation that the assailant was an agent or employee of the political subdivision. The situation in *Rutledge* presented an employment relationship, and accordingly, we found the city to be immune from suit. In *Rutledge*, we were not presented with the question of whether *Doe* was correctly decided, but we find that question squarely before us today.

As we noted above, our propositions of statutory interpretation require us to give statutory language its plain and ordinary meaning. And we have done as much, particularly in *Johnson*, and later in *Britton*, when we held that the use of the phrase "arising out of" in the intentional tort exception to the PSTCA meant that more than just claims for listed intentional torts were exempted and that plaintiffs may not reframe claims that arise out of those intentional torts to escape the exemption.[29]

Our decision in *Doe*,[30] where we held that the claim was not based upon the underlying assault but upon the breach of the legal duty to take reasonable steps to prevent foreseeable violence from occurring on its premises, was rooted in *Sheridan*.[31] But *Doe* is an outlier in that it is inconsistent with our prior and

[26] *Jill B. & Travis B., supra* note 5, 297 Neb. at 92-93, 899 N.W.2d at 265.

[27] *Rutledge v. City of Kimball, supra* note 7.

[28] *Id.* See *Doe v. Omaha Pub. Sch. Dist., supra* note 8.

[29] See, *Britton v. City of Crawford, supra* note 22; *Johnson v. State, supra* note 16.

[30] *Doe v. Omaha Pub. Sch. Dist., supra* note 8.

[31] *Sheridan v. United States, supra* note 20.

subsequent case law generally setting forth a broad definition of the phrase "arising out of an assault or battery."

A broad definition is consistent with the plain language of that phrase, which suggests that if a claim would not exist without an assault or battery, it arises out of that battery and is more consistent with our other case law on this issue. As Justice O'Connor noted in her dissenting opinion in *Sheridan*, "'arising out of,'" if given its ordinary meaning, would cover any case in which a battery is essential to the claim.[32] We can conceive of no reason why the scope or meaning of the phrase "arising out of," as we defined it in *Britton*, should change depending on the status of the actor as governmental versus nongovernmental.

Additionally *Sheridan*, upon which we relied in *Doe*, did not purport to give the waiver of sovereign immunity in the Federal Tort Claims Act a strict construction. Indeed, the U.S. Supreme Court has not uniformly used the same strict construction canon with respect to waivers of sovereign immunity. It recently noted that such a canon is simply "a tool for interpreting the law, and we have never held that it displaces the other traditional tools of statutory construction."[33]

Conversely, this court has long strictly construed waivers of immunity in favor of a State or political subdivision. In order to strictly construe against a waiver of sovereign immunity, we must read exemptions from a waiver of sovereign immunity broadly.[34] Of course, as the dissent to this opinion notes, courts must be careful to interpret exceptions to a waiver of immunity in a way that does not defeat the initial purpose of

---

[32] *Id.*, 487 U.S. at 409 (O'Connor, J., dissenting) (citing *Kosak v. United States*, 465 U.S. 848, 104 S. Ct. 1519, 79 L. Ed. 2d 860 (1984), and *United States v. Shearer*, 473 U.S. 52, 105 S. Ct. 3039, 87 L. Ed. 2d 38 (1985)).

[33] *Richlin Security Service Co. v. Chertoff*, 553 U.S. 571, 589, 128 S. Ct. 2007, 170 L. Ed. 2d 960 (2008).

[34] See *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015).

waiving the government's immunity.[35] But even in balancing those considerations, we are constrained by the language utilized by the Legislature. A broad reading of the phrase "arising out of" corresponds to a strict reading of the situations under which a sovereign would be entitled to immunity.

Nor is this inconsistent with the definition of the term "tort claim" in § 81-8,210(4), which requires, in relevant part, "the negligent or wrongful act or omission of any employee of the state." The broad definition of the phrase "arising out of" encompasses and provides immunity for, at a minimum, the acts of both a State actor alleged to have committed an intentional tort and one alleged to have been negligent in a situation that includes the commission of an intentional tort.

Although we do not dispute the dissent's contention that one injury can arise from multiple wrongful acts, the plain language of the intentional tort exception in § 81-8,219(4) provides that if that injury "arise[s] out of," in this case an assault or battery, the exception applies to bar the claim. With the exception of *Doe*, our interpretation of this language has been consistent and the Legislature has not seen fit to correct us.[36]

[9,10] Respect for precedent should not prevent us from restoring our adherence to the Nebraska Constitution and statutes.[37] We have said that while the doctrine of stare decisis is entitled to great weight, it is grounded in the public policy that the law should be stable, fostering both equality and predictability of treatment.[38] And we have recognized that overruling precedent is justified when the purpose is to eliminate inconsistency.[39] Thus, we said that remaining true to an intrinsically sounder doctrine better serves the values of stare

---

[35] See *Dolan v. U.S. Postal Service*, 546 U.S. 481, 126 S. Ct. 1252, 163 L. Ed. 2d 1079 (2006).

[36] See *Doe v. Omaha Pub. Sch. Dist., supra* note 8.

[37] *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017).

[38] *Id*.

[39] *Id.*

decisis than following a more recently decided case inconsistent with the decisions that came before it.[40]

Our decision in *Doe* was inconsistent with the approach we have taken in other cases as it relates to the "arising out of" language, and it does not comply with our obligation to strictly construe the State's waiver of immunity.[41] That decision was wrong, and as such, we overrule it.

We are therefore left to determine whether the intentional tort exception set forth in § 81-8,219(4) applies to provide the State immunity from Moser's suit. We find that it does.

Although Moser's complaint plainly alleges a negligence cause of action, in that complaint, Moser alleged that Schroeder "assault[ed]" Berry. A reading of the complaint makes it clear that all of Moser's allegations, including her claims of negligence in the decision to double bunk Berry and Schroeder, flow from this assault.

Of course, the assault that Moser outlines in her complaint was horrific. But in accordance with our case law with respect to the intentional tort exception discussed above, we must conclude that Moser's allegations arose out of an intentional tort for purposes of the STCA. To find otherwise would require this court to engage in the very "semantic recasting of events" that we rejected in *Britton*.[42] This we will not do.

The Legislature may wish to revisit the State's sovereign immunity in cases such as the one presented by this appeal, as indeed that body has done previously in response to decisions of this court.[43] But it is clear that it is the province of the Legislature, and not of this court, to make such policy judgments.

---

[40] *Id.*

[41] See *Doe v. Omaha Pub. Sch. Dist., supra* note 8.

[42] *Britton v. City of Crawford, supra* note 22, 282 Neb. at 386, 803 N.W.2d at 518.

[43] See § 81-8,219(5) (Cum. Supp. 2018) (as amended by 2018 Neb. Laws, L.B. 729, § 1, effective July 19, 2018).

Because we conclude that the State had immunity from suit under the intentional tort exception of the STCA, as set forth in § 81-8,219(4), we need not address Moser's assignments of error on appeal relating to immunity under the discretionary function exception.

## CONCLUSION

Over 50 years ago, the Legislature set the parameters for the State's immunity from suit in various scenarios. This court strictly construes those parameters. We conclude that in this case, the State has immunity from suit under the intentional tort exception. As such, the district court did not err in dismissing Moser's complaint. The decision of the district court is affirmed.

Affirmed.

Freudenberg, J., not participating.

Miller-Lerman, J., dissenting.

I respectfully disagree with the majority's conclusion to dismiss this complaint based on immunity where the complaint generally alleges that the death of an inmate was negligently caused by the State's violating its duties and its formal regulations, and specifically alleges that the State's employees negligently "doubled bunked" a "talkative" inmate "days away from his parole hearing" with an expected release date in 8 months with a known "bad temper[ed]" inmate serving a life sentence, the latter of whom after 5 days of sharing a cell "wrapped his arm around [the former's] neck and squeezed for five minutes" until "he felt certain [the former] was dead."

In *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007), this court followed the reasoning of the U.S. Supreme Court's holding in *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), but today the majority chooses instead to follow the dissent in *Sheridan* and overrules *Doe* based on its dubious notion that the U.S. Supreme Court and the Nebraska Supreme Court interpret the same statutory language so differently that adhering to

U.S. Supreme Court precedent would offend Nebraska. As explained below, finding no meaningful difference between statutory interpretation habits of the Nebraska Supreme Court and the U.S. Supreme Court in this regard and reading the language of Neb. Rev. Stat. § 81-8,219(4) (Reissue 2014) in the context of the State Tort Claims Act provisions of which it is a part, I conclude that the intentional tort assault exception to the waiver of sovereign immunity does not apply; hence, the State is subject to suit in this case.

This is one of a number of recent cases in which the State introduced a new theory for the first time on appeal—in this instance, in its appellate brief. See *Candyland, LLC v. Nebraska Liquor Control Comm., ante* p. 169, 944 N.W.2d 740 (2020) (Miller-Lerman, J., concurring) (noting that theory raised for first time at oral argument); *State v. Vann, ante* p. 91, 944 N.W.2d 503 (2020), (Miller-Lerman, J., concurring) (noting that theory raised for first time at oral argument resulted in overruling precedent). Unlike its approach in the trial court, the State now contends that *Doe, supra*, should be overruled and that the complaint should be dismissed based on the intentional tort assault exception to the waiver of sovereign immunity. Although appellant may have a heavy burden in being able to prove negligence by the State, in my view, she has alleged sufficient facts described below to survive a motion to dismiss.

The complaint filed by Telena Moser, as personal representative of the estate of Terry L. Berry, Jr., alleged that the State was negligent when on April 10, 2017, it placed Berry in the same restrictive housing cell as Patrick W. Schroeder at the Tecumseh State Correctional Institution (TSCI). On April 15, Schroeder wrapped his arm around Berry's neck and squeezed for 5 minutes until he felt certain Berry was dead. Restrictive housing is defined by Neb. Rev. Stat. § 83-170(13) (Cum. Supp. 2016) as "conditions of confinement that provide limited contact with other offenders, strictly controlled movement while out of cell, and out-of-cell time of less than twenty-four

hours per week." The purpose of restrictive housing is to separate a violent inmate from the general population or to separate an inmate at risk of violence from the general population.

According to the allegations, Schroeder was serving a life sentence for first degree murder, was known for "having a bad temper," and expressly warned a caseworker of his unwillingness to bunk with Berry. Berry was days away from a parole hearing, with a tentative release date of December 8, 2017.

According to the allegations, although TSCI unit managers knew of the risks and warnings associated with placing Berry and Schroeder together, they nonetheless decided to house the inmates together. A staff member had expressed her concerns regarding the placement to several other staff members, stating that she "'personally felt that it was not the best idea,'" since Berry "'was known to be very talkative and bothersome,'" and that Schroeder "'in for life, with a temper[,] would not want someone like'" Berry as a cellmate.

The complaint alleges the following failures of the TSCI staff:

- "Two unit managers of TSCI were responsible for making the joint decision to double bunk Berry and Schroeder in restrictive housing, but they failed to complete the statement required by Administrative Regulation 210.01, wherein they state why the cell assignment provides each cellmate with reasonable safety from assault."
- "Further, the unit managers did not complete the compatibility assessment until after each inmate was warned that they would be double bunked with another inmate if they did not comply with the directive to move cells."
- "In short, TSCI staff did not follow proper procedure required by Administrative Regulation 210.01(VIII)(G)."

## STATUTORY INTERPRETATION OF THE ASSAULT EXCEPTION IS THE SAME IN NEBRASKA AND U.S. SUPREME COURT

At issue is the meaning of the "arising out of assault" language found in the State Tort Claims Act, § 81-8,219(4), and its federal counterpart in the Federal Tort Claims Act (FTCA),

28 U.S.C. § 2680(h) (2012), and specifically, whether this intentional tort exception to the waiver of sovereign immunity applies when the State is being sued for its allegedly negligent acts which occurred before an assault was committed by a non-governmental actor.

We have stated that the waiver of sovereign immunity should be strictly construed and, as a corollary thereto, that the exceptions should be read broadly. See *Brown v. State*, 305 Neb. 111, 939 N.W.2d 354 (2020). We have specifically applied this approach to the intentional tort exception portion of the State Tort Claims Act, § 81-8,219(4), which exception is derived from the FTCA. See *Jill B. & Travis B. v. State*, 297 Neb. 57, 899 N.W.2d 241 (2017). The U.S. Supreme Court has addressed the waiver of sovereign immunity and the "arising out of assault" exception language. Just like Nebraska, the U.S. Supreme Court has stated that a sovereign immunity waiver "will be strictly construed . . . in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996). And just like Nebraska, one justice has summarized the applicable U.S. Supreme Court law as follows: "In cases where, as here, the question whether a particular claim is subject to an exception is disputed, we have construed the FTCA exceptions broadly to preclude claims for actions Congress intended to except from the FTCA's general waiver of immunity." *Dolan v. Postal Service*, 546 U.S. 481, 499 n.3, 126 S. Ct. 1252, 163 L. Ed. 2d 1079 (2006) (Thomas, J., dissenting).

The U.S. Supreme Court has warned, however, that "'unduly generous interpretations of the exceptions run the risk of defeating the central purpose of the statute,' . . . which 'waives the Government's immunity from suit . . . .'" *Id.*, 546 U.S. at 492 (Thomas, J., dissenting). And we too have resisted the temptation to accord unduly generous interpretations of exceptions which would defeat the waiver. See, e.g., *Brown*, 305 Neb. at 122, 939 N.W.2d at 361 (declining to read language of exception "so broadly" that it "would judicially expand" exception).

Applying U.S. Supreme Court precedent and according a broad reading to the exception provisions of the FTCA to a fact pattern akin to the instant case, the U.S. Court of Appeals for the Second Circuit stated: "Despite the broad reading given to [the FTCA] section 2680(h)'s 'arising out of' language [equivalent to Nebraska's § 81-8,219(4)], [the section] may not bar mixed claims of negligence and intentional conduct in the relatively uncommon case" where the negligence claim is independent of the intentional tort. *Guccione v. U.S.*, 847 F.2d 1031, 1037 (2d Cir. 1988). So even applying a broad reading to the intentional tort exception, cases like the instant matter are not barred where there is independent negligence by the government.

Given the above, the Nebraska Supreme Court and the U.S. Supreme Court clearly share the same approach to the statutory language at issue. Nevertheless, without making an apt comparison, the majority insists the Nebraska approach to statutory interpretation is so different that reading the same language requires a result in Nebraska different from that of the U.S. Supreme Court's controlling authority.

The majority takes this position because it insists on complete fidelity to the "strictly construe waiver" but "broadly construe exceptions" language. But this approach overlooks Nebraska's jurisprudential experience with the "strict-broad" language. For example, as recently as in 2017, we considered another portion of the intentional tort exception provision, misrepresentation, and said: "We must *strictly construe* the misrepresentation *exception* to the waiver of sovereign immunity in favor of the State . . . ." *Jill B. & Travis B. v. State*, 297 Neb. 57, 95, 899 N.W.2d 241, 266 (2017) (emphasis supplied). This verbage simply illustrates why we should thoughtfully examine the language and provisions of the State Tort Claims Act for their coherent meaning rather than decide meaning based on imposition of a "strict-broad" label devoid of analysis. "Our object should be to read the Act so as to make it 'consistent and equitable', Feres, 340 U.S. at page 139, 71 S.Ct. at page

156, in which we should be untrammeled by any rule of 'strict' or 'liberal' construction." *Panella v. United States*, 216 F.2d 622, 624 (2d Cir. 1954).

### STATE TORT CLAIMS ACT IS PATTERNED AFTER THE FTCA SO WE LOOK TO U.S. SUPREME COURT DECISIONS UNDER THE FTCA

We have long recognized that Nebraska's State Tort Claims Act is patterned after the FTCA. See *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005). And the FTCA was the culmination of a long effort to eliminate thousands of private claims bills at every session of Congress and thus mitigate the consequences of sovereign immunity from suit. *United States v. Muniz*, 374 U.S. 150, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963); *Feres v. United States*, 340 U.S. 135, 71 S. Ct. 153, 95 L. Ed. 152 (1950). Where the U.S. Supreme Court cases have been clear, we have looked to U.S. Supreme Court precedent and legislative history of the FTCA to inform our reading of Nebraska statutes patterned after federal legislation. In *Jill B. & Travis B., supra*, where we were considering the "misrepresentation" exception in § 81-8,219(4), we first looked to the U.S. Supreme Court decisions for guidance. But where the U.S. Supreme Court does not directly provide the answer, we then consider other federal authority. See *Haffke v. Signal 88, ante* p. 625, 947 N.W.2d 103 (2020) (explaining that it is appropriate to look to federal court decisions construing similar and parent legislation). Fortunately in this case, the U.S. Supreme Court's decision in *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), supplies guidance and resolution.

### *SHERIDAN* OPINION (PLUS JUSTICE KENNEDY'S CONCURRENCE) SHOW THE STATE IS NOT IMMUNE FROM SUIT

In the instant case, appellant alleged that the decision of the TSCI staff to double bunk the victim, Berry, with the inmate assailant, Schroeder, was negligent because it violated their

duty of care to Berry in a variety of ways. The district court and the majority in this case found that the negligence cause of action should be dismissed based on the exception provisions of § 81-8,219.

Language of Intentional Tort Assault Exception
Applies to Intentional Torts Committed by
Governmental Employees But Not to
Intentional Torts Committed by
Nongovernmental Assailant

As an initial matter, we quote Nebraska's State Tort Claims Act as relevant to our analysis of whether appellant stated a cause of action. Neb. Rev. Stat. § 81-8,210(4) (Reissue 2014) defines the "[t]ort claims" for which sovereign immunity is waived. This statute provides that such claims involve "the negligent or wrongful act or omission of any employee of the [S]tate." See, similarly, 28 U.S.C. § 1346(b) (2012) (providing for "claims . . . caused by the negligent or wrongful act or omission of any employee of the Government"). Later in § 81-8,219, the State Tort Claims Act provides exceptions, i.e., that there will be no liability for such act or omission of any employee of the State when the employee's acts or omissions giving rise to the claim arise from his or her intentional torts. Section 81-8,219(4), the intentional tort exception, states that the State Tort Claims Act shall not apply to: "Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." The FTCA exception language is comparable to § 81-8,219(4), but the FTCA includes an additional proviso not relevant here. The intentional tort exception, 28 U.S.C. § 2860(h), provides the United States shall not be liable for "[a]ny claim arising out of assault, battery . . . ." I note that Congress and the Legislature did not bar any "suit" arising out of an assault; they barred only "claims," which suggests that the exception was associated with intentional acts of governmental employees against whom a claim could be filed as distinguished from

a nongovernmental intentional tort-feasor against whom a suit can be filed.

### Cases Interpreting Intentional Tort Assault Exception and Legislative History Show That It Applies to Intentional Torts Committed by Governmental Employees but Not to Intentional Torts Committed by Nongovernmental Assailant

We have stated that the State Tort Claims Act, like the FTCA, represented the legislators' willingness "to waive sovereign immunity where *its employees acted negligently but not where they acted deliberately or recklessly*—at least as to the specified torts." *Jill B. & Travis B. v. State*, 297 Neb. 57, 73, 899 N.W.2d 241, 254 (2017) (emphasis supplied). That is, we have recognized that the intentional tort-feasor addressed in § 81-8,219(4) is a governmental employee.

The FTCA legislative history pertaining to the assault exception was summarized in *Panella v. United States*, 216 F.2d 622 (2d Cir. 1954), the case relied upon in *Sheridan, supra*, for its conclusion that a cause of action may exist where there is an allegation of antecedent negligence by the government, notwithstanding the existence of an assault in the narrative. In particular, the legislative history of the FTCA shows that the "'assault and battery' exception related to acts of government employees." *Panella*, 216 F.2d at 626. The debate of "Hearings on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess. p. 33" in 1942 shows the following questions and answers: "'Mr. Robsion: On that point of deliberate assault[,] that is where some agent of the Government gets in a fight with some fellow? Mr. Shea: Yes. Mr. Robsion: And socks him? Mr. Shea: That is right.'" *Panella*, 216 F.2d at 626 (emphasis omitted).

Most of our string of cases discussing the intentional tort assault exception under the State Tort Claims Act, and its roughly comparable counterpart in the Political Subdivisions Tort Claim Act, have involved intentional acts committed by

state or local governmental employees, and we have applied the exception and found immunity thus resulting in dismissal. E.g., *Rutledge v. City of Kimball*, 304 Neb. 593, 935 N.W.2d 746 (2019) (involving city employee choking victim); *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011) (involving law enforcement shooting the decedent); *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005) (involving sexual assault by Department of Correctional Services employee). However, in *Doe v. Omaha Pub. Sch. Dist.*, 273 Neb. 79, 727 N.W.2d 447 (2007), a student was the assailant and the exception did not apply; hence, the political subdivision waived immunity.

The majority relies on this string of cases (except for *Doe*) to support its decision. As I noted above, in these cases, the assailant was a governmental employee and it was the conduct of these actors to which the statutory assault exception was addressed and from whose acts the governmental entity remained immunized. These cases merely say that the government does not lose its immunity in cases where injuries arise from assaults by government actors.

The majority opinion's reliance on this string of cases is not helpful where, as here, the assault was committed by a nongovernmental individual, i.e., an inmate. As explained, the State Tort Claims Act's general waiver of immunity applies only to governmental employees. The claims covered by the State Tort Claims Act are those claims which involve "the negligent or wrongful act or omission of any employee of the [S]tate." § 81-8,210(4). It logically follows that, as stated in *Sheridan*,

[t]he exception should therefore be construed to apply only to claims that would otherwise be authorized by the basic waiver of sovereign immunity. Since an assault by a person who was not employed by the Government could not provide the basis for a claim under FTCA [or the State Tort Claims Act], the [intentional tort] exception could not apply to such an assault; rather, the exception

only applies in cases arising out of assaults by federal [or State] employees.

*Sheridan v. United States*, 487 U.S. 392, 400, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988).

For completeness, I note that I am aware of more nuanced considerations where there is some question as to whether the government-employed assailant was acting within the scope of his or her duties at the time of the incident and other cases where the government is being sued for preceding acts of negligent hiring, retention, or supervision of a government-employed assailant. See Rebecca L. Andrews, *So the Army Hired an Ax-Murderer: The Assault and Battery Exception to the Federal Tort Claims Act Does Not Bar Suits for Negligent Hiring, Retention and Supervision*, 78 Wash. L. Rev. 161 (2003). But these issues are not implicated in the instant case. Indeed, with respect to the former, *Sheridan* clarifies that in permitting the negligence claim to go forward, the assailant's "employment status [at the moment of the incident] has [no] bearing on the basis for petitioners' [negligence] claim for money damages, [and § 2680(h),] the intentional tort exception to the FTCA[,] is not applicable in this case." 487 U.S. at 403. Here, the basis for appellant's claim is the tort of negligence, independent from the injury resulting from an intentional act by an assailant who was not a governmental employee. That should end the matter, but given the majority opinion, the analysis must continue.

## *Sheridan* Rejects the "But for the Assault" Rationale Relied On by the Majority in This Case

The majority finds that the assault need not be by a governmental employee so long as there is an assault somewhere in the picture. That is, the majority states that the State's alleged antecedent negligence arises only as a result of the subsequent assault albeit by a nongovernmental actor. The majority reasons that "but for" the assault, there can be no alleged negligence by the State. The "but for" rationale of the majority

here is reminiscent of the plurality view in *United States v. Shearer*, 473 U.S. 52, 105 S. Ct. 3039, 87 L. Ed. 2d 38 (1985), but that view was later expressly rejected in the *Sheridan* opinion. See Andrews, *supra*.

The "but for" rationale adopted by the majority suffers from several defects, including confusing "claim" with "injury." Not only is it belied by the language of the statute discussed above, but it ignores a basic precept of tort law that one injury "can arise from more than one wrongful act[s]"—in this case, a negligence "claim" which is distinct from an assault. See *Sheridan v. United States*, 487 U.S. 392, 405, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988) (Kennedy, J., concurring). See, also, 1 Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 34 (2010). An event may have more than one proximate cause. See 1 Restatement (Third), *supra*. An intentional act intervening between a negligent act and the result does not always vitiate liability for the negligence. *Id.* A superseding cause of harm will not excuse an actor's negligence where the actor should have realized the likelihood that such a situation might be created and the third person might avail himself of the opportunity to commit such a tort or crime. *Id*. As Justice Kennedy stated in *Sheridan*, the "but for" approach adopted by the *Sheridan* dissent (and by this court's majority) implies that the "intentional act somehow obliterates the legal significance of any negligence that precedes or follows it." 487 U.S. at 406 (Kennedy, J., concurring).

Contrary to the majority, I read the complaint to allege negligence by the TSCI staff in a variety of ways, e.g., violating duty of care for inmates, not following regulations regarding the decision to double bunk, ignoring the known dangerous propensity of Schroeder, et cetera, which acts are distinct and predate the intentional assault by the nongovernmental assailant. In *Block v. Neal*, 460 U.S. 289, 298, 103 S. Ct. 1089, 75 L. Ed. 2d 67 (1983), the U.S. Supreme Court explained that given the language and history of the FTCA, even where a governmental employee's conduct makes certain claims not

actionable due to an exception in 28 U.S.C. § 2680(h), a claimant is not barred by that statute from pursuing a distinct claim "arising out of other aspects of the Government's conduct." As stated in a concurrence to an opinion of the U.S. Court of Appeals for the 11th Circuit: "So it is clear that any suggestion that [the intentional tort exception,] § 2680(h)[,] bars all claims for which the injuries arose directly out of an excepted tort is overly broad, incorrect, and inconsistent with the governing law of *Sheridan*." *Alvarez v. U.S.*, 862 F.3d 1297, 1314 (11th Cir. 2017) (Rosenbaum, J., concurring).

### Appellant's Negligence Cause of Action Against the State Did Not "Arise" From the Nongovernmental Assailant's Intentional Assault

Appellant alleged a cause of action for negligence against the State by virtue of certain governmental employees allegedly having failed in their duty to protect and care for the inmate Berry. Although another inmate, Schroeder, assaulted Berry, the State's alleged antecedent negligence is premised on breach of a "different duty," see *Block*, 460 U.S. at 297, sometimes referred to as an "independent affirmative duty." See *LaFrancis v. U.S.*, 66 F. Supp. 2d 335 (D. Conn. 1999) (collecting cases under doctrine of independent affirmative duty). The injury from the assault on Berry can be traced back to more than one type of tortious conduct, and the two torts at issue, negligence and an intentional tort, do not rely on the same factual allegations.

*Sheridan, supra*, has been described as carving out an "exception to an exception to an exception to a general rule." *CNA v. United States*, 535 F.3d 132, 148 (3d Cir. 2008). The general rule is sovereign immunity, the first exception is the FTCA's limited waiver of the government's immunity, the second exception is the intentional tort exception that reinstates the government's immunity, and the third exception is the narrow category of cases, identified in *Sheridan*, which may

proceed against the sovereign. As noted, the third category reflects the independent affirmative duty doctrine.

The *Sheridan* Court held that "in at least some situations[,] the fact that an injury was directly caused by an assault or battery will not preclude liability against the Government for negligently allowing the assault to occur." 487 U.S. at 398. Contrary to the majority's view to the effect that the State's alleged negligence arises from the assault, the roots of the assault lie in the State's own alleged negligence. So it would be contrary to the language of the State Tort Claims Act and unsound to afford immunity to an alleged breach of duty by a governmental entity because an intervening event, the very anticipation of which made that governmental entity's conduct negligent, has brought about the expected harm. *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986).

The U.S. Court of Appeals for the 10th Circuit, relying on U.S. Supreme Court precedent, summarized the key inquiry in cases of two torts as "can an FTCA plaintiff escape the bar of § 2680(h) by arguing that the battery was the natural consequence of prior governmental negligence . . . ?" *Franklin v. U.S.*, 992 F.2d 1492, 1498 (10th Cir. 1993). If the answer to this question is in the affirmative, the complaint survives. The complaint in this case does make this argument, and in my view, should not be dismissed at this stage of the proceedings.

In *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), where liability against the government was not precluded, the Court relied on two cases which involved assaults by inmates rather than by governmental employees. Both cases alleged negligence by federal employees by failing to prevent the assault that caused injury: *United States v. Muniz*, 374 U.S. 150, 83 S. Ct. 1850, 10 L. Ed. 2d 805 (1963) (allowing 12 inmates to gather to beat up one inmate, the plaintiff), and *Panella v. United States*, 216 F.2d 622 (2d Cir. 1954). The *Sheridan* Court agreed with Judge (later Justice) Harlan's reasoning in *Panella* based on statutory interpretation to the effect that the intentional tort

exception only applied to claims already authorized by the waiver of sovereign immunity, that is, to claims involving torts committed by governmental employees. In Nebraska, that concept is found in § 81-8,210(4), which provides that the claims to which sovereign immunity is waived are "the negligent or wrongful act or omission of any employees of the [S]tate." Contrary to § 81-8,210(4), the majority's reasoning assumes that the waiver of the State's immunity includes a claim against the State under the State Tort Claims Act based solely on an inmate's assault of another inmate. But there is no such cognizable claim under the State Tort Claims Act, so one cannot logically apply an exception to a nonexistent claim. See *Sheridan, supra*.

An assault by a nongovernmental employee could not provide the basis for a claim under the FTCA, and the U.S. Supreme Court held that the assault exception "only applies in cases arising out of assaults by federal employees." *Sheridan*, 487 U.S. at 400. This conclusion is based on federal statutory language comparable to that of Nebraska's State Tort Claims Act. In view of the foregoing, the *Sheridan* Court found it unnecessary to rely on the temporal reasoning in *Muniz* to the effect that the plaintiff's claim did not "'arise out of'" the assault by the inmates that caused the injuries, but instead the focus is on

> the Government's negligent act or omission [in failing to prevent the assault that caused injury]; the intentional commission is simply considered as part of the causal link leading to the injury. Under this view, the assailant's individual involvement would not give rise to Government liability, but antecedent negligence by Government agents could . . . .

*Sheridan*, 487 U.S. at 399. In both *Muniz* and *Panella*, upon which *Sheridan* relied, just as in the instant case, recovery was sought based on the negligence of the governmental entity, and given the fact that the assaults were committed by inmates, the intentional tort exception was not applicable.

## CONCLUSION

Given the foregoing analysis, in my view, this complaint should not be dismissed under the intentional torts assault exception to the waiver of sovereign immunity because the complaint adequately alleges negligence by the State in violation of its own regulations for the act of "double bunking" a "talkative," soon-to-be-released inmate with a "bad temper[ed]" inmate serving a life sentence, the latter of whom within 5 days of sharing a cell "wrapped his arm around the [former's] neck and squeezed for five minutes" until "he felt certain [the former] was dead."